STONE v. UNITED STATES TITLE GUARANTY & INDEMNITY CO.

(Supreme Court, Appellate Division, First Department.    December 19, 1913.)

1. CORPORATIONS (§ 407*)—OFFICERS—AUTHORITY.

    The acting assistant secretary of a title guaranty company has no authority, by virtue of his office, to employ an agent to make a contract of sale for the company.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1615–1619; Dec. Dig. § 407.*]

2. PRINCIPAL AND AGENT (§ 123*)—AUTHORITY OF AGENT—ASSERTION OF AGENCY.

    That an agent represented to a third person, with whom he dealt, that he had authority to make a contract in behalf of the principal, does not prove the authority of the agent.

    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. § 123.*]

3. BROKERS (§ 94*)—AUTHORITY—SPECIAL CONTRACTS.

    In the absence of a special contract conferring authority, a broker employed to sell or to assist in selling property, has only the power to find a purchaser and bring the seller and purchaser together.

    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 136; Dec. Dig. § 94.*]

4. BROKERS (§ 94*)—AUTHORITY—SPECIAL CONTRACTS.

    An employé of a firm of mortgage brokers was requested by an officer of a title guaranty and indemnity company to see if he could sell a mortgage interest.    After he had failed to make a sale, the officer told him to go elsewhere and see if he could not sell to some one else, and directed him to go out in the market and try to make a sale.    Held, that the employment was merely that of a broker to procure a purchaser, without any authority to make a binding contract for the company.

    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 136; Dec. Dig. § 94.*]

5. BROKERS (§ 94*)—EMPLOYMENT—AUTHORITY.

    A broker employed to sell a junior mortgage interest at a specified price has no authority to make a contract containing conditions, on the performance of which the purchaser procured agrees to take the interest.

    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 136; Dec. Dig. § 94.*]

Appeal from Trial Term, New York County.

Action by Martin M. Stone against the United States Title Guaranty & Indemnity Company.    From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.    Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Benjamin Reass, of Brooklyn, for appellant.

Aaron W. Levy, of New York City, for respondent.

SCOTT, J.    This is an action to recover damages for the breach of an alleged contract by defendant to sell to plaintiff a subordinate interest in a bond and mortgage.    In December, 1909, one Isaac Polansky, owner of premises in Hester street in the city of New York de-

sired to obtain a loan of $75,000 upon his bond, to be secured by a mortgage upon his real property. He employed for that purpose a broker named Kronsky, who arranged with the defendant and the New York Life Insurance Company that the latter company should take a senior interest in such a mortgage, to the extent of $62,500, defendant guaranteeing the loan to that extent. This left a subordinate interest of $12,500 to be disposed of. Kronsky tried to dispose of this himself, but was unable to do so. He then called to his aid one Schinsky, who was in the employ of a firm of mortgage brokers known as H. D. Baker & Co. Schinsky found a man named Marx who was willing to buy, but was unwilling to agree to the terms and conditions of sale prescribed by defendant. Schinsky testifies that Kronsky took him to see one O'Brien, who at the time was acting assistant secretary of the defendant; that O'Brien asked him if he could find a purchaser.

"Mr. O'Brien did not tell me to go and find a purchaser, but he asked me if I could sell the interest. I was a broker. Mr. O'Brien asked me if I could sell that junior interest, and I told him I would try to sell it, and I took the details and went out in the market and tried to sell it. I looked for a purchaser."

After the attempt to sell to Marx had failed Schinsky testifies that Mr. O'Brien said to him:

"We will have to go elsewhere to see if we cannot sell it to somebody else, and go out in the market again and try to sell it."

It is upon this conversation (denied by O'Brien) that the plaintiff builds his whole case; his claim being that the defendant thereby made Schinsky its agent, not to find a purchaser, but to actually make a valid binding contract of sale. On December 14, 1909, Schinsky delivered to O'Brien the following letter, addressed, not to defendant, but to H. D. Baker & Bro., who were Schinsky's employers.

"New York, Dec. 14th, 1909. Messrs. H. D. Baker & Bro.—Gentlemen: I, the undersigned, am willing to purchase and take an assignment of the junior interest in a first mortgage affecting premises No. 103 Hester street, borough of Manhattan, New York City, and duly recorded in the office of the register of the county of New York, in the amount of $75,000, said junior interest amounting to $12,500 bearing interest at the rate of 5% per annum and maturing in three years. I will purchase the said junior interest amounting to the sum of $12,500 as aforesaid, for the sum of $10,300. Title insurance policy insuring the title to said mortgage and assignment shall be issued to me without charge or expense on my part. Very truly yours, Martin M. Stone, Metropolitan Bank, 271 Broadway. Newman & Butler, Attorneys, 116 Nassau St."

The plaintiff's position is that, on the theory that Schinsky had full power, in defendant's behalf, to make a contract of sale as its agent, this acceptance by plaintiff made it a valid, binding contract; and, as it was not carried out, he claims as damages the difference between $10,300, which he offered to pay for the junior interest, and $12,500, the face value of this interest.

Schinsky refused to give O'Brien any particulars respecting Stone, or even his address, insisting that O'Brien should deal only with him-

self or his firm.  O'Brien thereupon gave Schinsky the following letter:

"December 14, 1909.  Mr. E. P. Schinsky, % Messrs. H. T. Baker & Bro., New York City—Dear Sir:  In regard to the junior interest of $12,500, in $75,000 mortgage on 103 Hester street, would state that I have read the acceptance of Mr. Stone, to your company, or firm, and will hold the same at your disposal, but will deal with you direct in the matter.  It is understood I presume by your client, that this junior interest is to be assigned to him on the same conditions as was the original deal of Mr. Marx, as per my letter of December 4th.  It is also understood that should the deal fall through by reason of any act of the New York Life Insurance Company, or of the owner, or any other party interested beside this Company, then and in that case this Company is in no way liable to H. T. Baker & Bro., or their clients for any damage or remuneration whatever.  This of course, only carries out the agreement as signed by you and Mr. Krone on December 6th.  I am very glad to see that you got another client for this loan, and must congratulate you on your promptness.  We will keep you posted on the progress of the matter, and will send your client or yourself the report when complete.  Very respectfully yours, O'B."

It appears now that Schinsky never showed this letter to plaintiff, but defendant, assuming that the sale had been made subject to its terms, sent to plaintiff's lawyer what papers were necessary.  This sale fell through because plaintiff refused to accept an assignment of the interest in the form and upon the conditions upon which the New York Life Insurance Company insisted.

If the real contract was that evidenced by the two letters above quoted it is evident that the plaintiff has no cause of action.  He must therefore succeed, if at all, upon his theory, already referred to, that Schinsky was authorized by defendant to actually make a sale as its agent, and to agree upon the terms of sale, and that the letter from plaintiff to H. D. Baker & Bro. was not an offer to buy, but an acceptance of an offer already made through Schinsky.  This latter claim is clearly untenable for several reasons:

[1, 2]  First.  There is no evidence, and no presumption arising from his office, that the acting assistant secretary of defendant had any authority to employ an agent to actually sell a mortgage, or to authorize such an agent to make a contract of sale for the company.  The fact, if it be a fact, that Schinsky represented to plaintiff that he had authority to contract in behalf of the defendant adds no strength to plaintiff's case, for no one can make himself an agent of another by merely asserting his agency.

[3, 4]  Second.  It is apparent that Schinsky's authority was only that of a broker, and he was well known in that capacity to all the parties in the transaction.  It is perfectly well settled and generally understood that the entire duty of a broker employed to sell or to assist in selling property is to search out a purchaser and to act as the intermediary to bring the seller and the purchaser together.  In the absence of a special and well-defined authority, it is no part of a broker's duty to actually make the sale in behalf of the owner.  Glentworth v. Luther, 21 Barb. 145; Alt v. Doscher, 102 App. Div. 344–348, 92 N. Y. Supp. 439; Sibbald v. Bethlehem Iron Company, 83 N. Y. 378, 38 Am. Rep. 441.  Accepting Schinsky's version of his interviews with

O'Brien at its fullest value, it is perfectly obvious that his employment was merely that of a broker to seek out a purchaser, and involved no authority to make a binding contract in behalf of defendant.

[5] Third. Even if it could be held that Schinsky was given any authority to sell the junior interest, he was given, upon his own statement, no authority to agree on any terms except to sell the interest at a given price. The letter from plaintiff, which he calls an acceptance, but which was in fact only a proposal, contains a condition not claimed to have been put within Schinsky's authority to consent to, viz.:

"Title insurance policy insuring the title to said mortgage and assignment shall be issued to me without charge or expense on my part."

It would serve no useful purpose to discuss so bald a case at greater length. It is perfectly clear upon the undisputed facts that plaintiff has not and never had a cause of action against defendant, and the court erred in not dismissing the complaint. That error it is our duty to correct.

The judgment and order appealed from must therefore be reversed, and the complaint dismissed, with costs to the appellant in all courts. All concur.