MALDAY REALTY COMPANY, INC., Plaintiff, *v.* SECURITY TRUST COMPANY OF ROCHESTER and MARK GODDARD, Defendants.

Supreme Court, Monroe County, March 31, 1937.

*Maloney & Foster*, for the plaintiff.

*Harris, Beach, Folger, Bacon & Keating*, for the defendants.

VAN VOORHIS, J. This action relates to the so-called Rochester Athletic Club property known as 74–78 Clinton avenue north, in the city of Rochester. Plaintiff asks the court to decree a conveyance of these premises to it by virtue of a contract claimed to have been entered into October 2, 1936, with defendant Security Trust Company of Rochester. The Security Trust Company denies that it accepted the plaintiff's offer for the property, and takes the position that no contract was entered into. Later it made a contract to sell the same property to defendant Mark Goddard.

Plaintiff executed a purchase offer October 1, 1936, and delivered it to Ralph Klonick Corporation, a broker. On the following day the broker returned it to plaintiff with a typewritten form of acceptance attached modifying in certain respects the provisions of the original offer. At the bottom of this acceptance was written in typewriting: "Security Trust Company of Rochester By ................," without the signature of any representative of the trust company appended thereto. There was, however, inscribed in the left-hand margin of the paper in pen and ink at an angle the words: "Approved Edw. Harris." Plaintiff thereupon wrote at the bottom of the paper: "We hereby accept and agree to the above modification," and signed its name.

Mr. Edward Harris was one of the attorneys for the Security Trust Company. He was also a vice-president, having ostensible authority to enter into contracts on behalf of the trust company for the sale of real estate. Plaintiff claims that the writing in the margin binds the defendant Security Trust Company of Rochester. The trust company claims that Mr. Harris, by his notation in the margin, merely approved the form of the instrument as its attorney, and that this fact was known to plaintiff and brought home to it before signing the counter acceptance.

All of the transactions between plaintiff and the defendant trust company were through the broker Ralph Klonick Corporation in the person of its president, Mr. Klonick. Plaintiff's president, Mr. William J. Maloney, testified that upon presentation to him by Mr. Klonick of the modified form of acceptance by the trust company they had a conversation concerning the presence of Mr. Harris' signature, in the course of which Mr. Klonick told Mr. Maloney that Mr. Wile, the executive vice-president of the defendant trust company, with whom he had had his dealings, had told him that this counter proposition had been prepared by Mr. Harris, and that Mr. Harris was a vice-president and had as much authority as he, Mr. Wile, had. Mr. Maloney further testified that at the same time Mr. Klonick exhibited to him a letter dated October 2, 1936, addressed to Klonick, signed by Julius M. Wile, as vice-president of the defendant trust company, stating: " In further reference to purchase offer of property 74–78 Clinton Avenue North, we hand you herewith by bearer, acceptance form as suggsted by our attorneys." After reading this letter and following this conversation, Maloney signed the counter acceptance for the plaintiff.

It is contended in behalf of the plaintiff not only that Wile's statement as quoted by Klonick was an assurance to Maloney upon which he was entitled to rely that Harris' signature was an execution by the trust company, but also that the letter from Wile, read in conjunction with the instrument, constituted a conditional acceptance, and became binding when the plaintiff attached its counter acceptance. Plaintiff regards the letter as both an interpretation of Mr. Harris' notation in the margin of the paper and as an affirmation of the modified acceptance on behalf of the trust company at the hands of its executive vice-president.

With these views I am unable to concur.

In the first place, it is well settled that Klonick had no apparent authority as broker to make any representations to Maloney as to the execution of the instrument.

" It is perfectly well settled and generally understood that the entire duty of a broker employed to sell or to assist in selling property

is to search out a purchaser and to act as the intermediary to bring the seller and the purchaser together. In the absence of a special and well-defined authority it is no part of a broker's duty to actually make the sale in behalf of the owner." (Citing cases.) (*Stone* v. *U. S. Title Guar. & Indem. Co.*, 159 App. Div. 679, 683; affd., 217 N. Y. 656; *Friedman* v. *New York Telephone Co.*, 256 id. 392; *Teitz* v. *Trixie Friganza Goettler*, 191 App. Div. 924.)

Klonick's statement to Maloney in substance that Wile had told him that Harris had as much authority to sign as Wile is, therefore, without effect in the absence of evidence, of which there is none, that Wile made such a statement to Klonick. Klonick was called as a witness for the plaintiff, but was not asked to testify concerning any of the conversations with Wile on this or any other matter which Maloney testified Klonick communicated to him. Authority in an agent is not established by the agent's declarations, and it is significant that Klonick, who is suing the Security Trust Company for his commissions on this transaction and would appear to have an interest in having the contract upheld, did not testify that these statements were actually made by Mr. Wile to him, nor contradict any of the contrary statements which Mr. Wile testified that he made to him.

In considering the modified acceptance form, it can hardly be held that this paper carries on its face evidence of an intention on the part of the trust company to execute it. " The mere production of the contract with the typewritten name of the grantor is insufficient to meet the requirements of the statute, unless the authority and intent in signing the name is shown." (*Landeker* v. *Co-Operative Building Bank*, 71 Misc. 517, per CRANE, J.)

The absence of any signature by any representative of the trust company upon the line provided for that purpose immediately beneath the typewritten signature of the trust company testifies more eloquently to the absence of an intention to execute than the words " Approved Edw. Harris " written vertically in small script in the margin do to the contrary. It is not disputed that Mr. Harris was attorney for the trust company, and that Mr. Maloney knew it. If, instead of writing in the margin the word " Approved," Mr. Harris had written " Approved as to form," no question could have been raised as to his intention. That he intended to approve it as attorney as to form only, and that his notation was not meant as a communication to the plaintiff but to his client, sufficiently appears from the instrument itself.

It is clear that the only basis upon which the plaintiff can claim that a contract was made either within or without the Statute of Frauds is the letter to Mr. Klonick signed by Mr. Wile that was

quoted above, which was caused to be delivered by Wile to Klonick together with the modified acceptance form, and which was read by Maloney prior to signing the purported counter acceptance for the plaintiff. If the contents of this letter had been sufficient to constitute unambiguously an acceptance of plaintiff's offer upon the terms stated in the modified acceptance form prepared by Mr. Harris, it is assumed, although not decided, that the minds of the parties would be considered to have met, and that a contract would have been entered into. (*LeLong* v. *Siebrecht*, 196 App. Div. 74; *Marks* v. *Cowdin*, 226 N. Y. 138, 145.) The fact that the letter is written to the defendant trust company's agent and not to the plaintiff may not be conclusive against the plaintiff. (*Marks* v. *Cowdin, supra.*)

But the letter and the form of acceptance delivered to Klonick, even without the explanation which was expressed to him orally at the time he received them, indicate that the trust company intended to commit the plaintiff to the proposition in modified form before committing itself, as it had the right to do, and the reasonable inference is that these papers were turned over to Klonick as broker to ascertain whether the plaintiff would make these modifications in its offer before it was acted upon. Although Mr. Wile's conduct in delivering these papers to the broker may have led plaintiff to believe that if it modified its original offer in accordance with the ideas of the attorney for the trust company, it would probably be accepted, Mr. Wile was careful to refrain from executing the acceptance form and to phrase his letter so as not to indicate that the trust company was bound. It merely incloses for consideration " acceptance form as suggested by our attorneys." This gave notice to plaintiff's president that Harris did not sign as vice-president, but approved as attorney; that his memorandum did not signify an execution of the instrument, but an approval of the form of the proposed acceptance.

In *Chiapparelli* v. *Baker, Kellogg & Co.* (252 N. Y. 192, 197) it is stated as follows: " A familiar rule of law has been expressed by Professor Williston in the following terms: ' Since an offer must be a promise a mere expression of intention of general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.' (Williston on Contracts, § 26.) It is, also, said by Professor Williston: ' Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is rather that they are inviting offers, or suggesting the terms of a possible future bargain than making positive offers.' (§ 27.) "

The facts passed upon in the cases cited are sufficiently similar to throw light upon the question. (*Chiapparelli* v. *Baker, Kellogg & Co., supra; Blakeslee* v. *Nelson*, 212 App. Div. 219; affd., 240 N. Y. 697; *Jewett* v. *Griesheimer*, 100 App. Div. 210 [Fourth Dept.]; *Patrick* v. *Kleine*, 127 Misc. 88; *Hefford* v. *Lichtman*, 116 id. 692.)

It is not uncommon when a transaction is in the negotiation stage for parties to exchange the views of their attorneys as an aid to arriving at a basis for agreement.

In *Jewett* v. *Griesheimer (supra)*, decided in this department, duplicate unexecuted copies of a five-year lease were inclosed to the prospective tenant with a letter saying: " Enclosed we hand you lease for store No. 329–331 Washington Street. We will agree to make the following repairs and alterations to this store and base-ment, etc." The copies of the lease were returned signed by the tenant and retained, but unsigned, by the landlords. The tenant went into possession. The court held that the signature upon the letter was not equivalent to signing the lease and that the tenancy became one from year to year, and that the lease never came into existence. The signer of the letter was, to be sure, but one of several co-owners of the property, and had not been authorized in writing by his co-owners to make the lease, although he had been authorized orally. In holding that the letter did not satisfy the Statute of Frauds, however, the court determined that the letter was not equivalent to signing the lease, and decided the case upon that ground rather than upon the narrower ground that the signer of the letter did not have written authority from his co-owners. The court stated: " The claim is made in behalf of the plaintiffs here that the signature to the letter inclosing the leases to the lessee was such a signature as would comply with section 207 of the Real Property Law (Laws of 1896, chap. 547). We think that this is an erroneous view. The most that can be said for it is that it would raise a question of fact as to the intention of the parties to consider that an execution, and that fact having been found against the contention of the plaintiff, is binding upon us, and we think the finding of the court was right. There is no intimation anywhere that the letter was to be construed as a part of the lease, but the fair interpretation of it is that it was an inducement to have the lease executed on the part of the lessee. There is no need of explana-tion with reference to any portion of the lease, and it would seem that a fair import of the letter is, that while it referred to the premises in question, it was simply an inducement for the execution of the lease, and was not to be taken as a portion of the lease itself. At all events we think the finding was one for the trial court to make, and, having made it, we see no reason for disturbing it" (p. 213).

In *Hefford* v. *Lichtman* (*supra*) it was held that a letter from a vendor's authorized agent inclosing a proposed contract and stating: " I wish you would kindly sign a copy of the contract and return to me with check for $4,000.00, upon receipt of which I will deliver a signed contract " was not sufficient to bind the vendor.

The issues have been considered thus far upon the assumption that plaintiff's position is correct that no weight can be given to conversations of Mr. Wile and other representatives of the trust company with Mr. Klonick. The correctness of this position is subject to qualification. Some cognizance should be taken of the fact that the letter upon which plaintiff depends was not addressed to the plaintiff but to the defendant's agent, Klonick. While this might have been sufficient if the letter had been drafted so as to express a definite commitment, nevertheless, uncertainties in the meaning of the letter must be interpreted in the light of the circumstances involved in the relationship between the trust company and its agent, to whom it was addressed. Wile testified that when Klonick brought in the plaintiff's original offer, after Wile had expressed doubt about its being accepted, Klonick himself said: " Why not send the paper over to your attorney and let him make any suggestions that appear to him that would make it more acceptable to the trust company?" That was done, and the language of the letter, in mentioning " the acceptance form as suggested by our attorneys," refers to the conversation in which Klonick had asked to be furnished with suggestions from the bank's attorney as to any matters that would make the offer more acceptable. It was also testified by Wile as well as Kenneth M. Wild and Mrs. Littel, employees at the bank, and not contradicted by Klonick, that at the time when the letter and acceptance form were delivered to Klonick on October second, he was told that the trust company was considering other dispositions of the property, and that no sale to the plaintiff would be decided upon before October sixth. Plaintiff objects that these statements were not made to it but to the trust company's agent, Mr. Klonick. It may properly be replied that neither was Mr. Wile's letter addressed to the plaintiff. That these uncontradicted oral statements were made to Klonick I find as a fact. Plaintiff can hardly rest its case upon a portion of the communication from the trust company to its agent without being bound by the entire communication. As pointed out above, Klonick had no ostensible authority to execute the contract on behalf of the trust company, nor had any express authority been conferred upon him to do so. It was not in his power to bind the bank to the bargain by reporting to the plaintiff only a portion of

what had been communicated to him by his principal, nor could the plaintiff acquire rights by reason of his concealment in exhibiting the letter without at the same time stating what had been stated to him at the time he received the letter and which clearly resolved ambiguities in the letter in favor of the position now taken by the trust company.

It is not important whether the decision of this case is based upon failure to satisfy the Statute of Frauds by reason of the absence of the signature of the trust company upon the modified form of acceptance, or whether it is based upon the absence of a meeting of the minds of the parties inasmuch as there was no oral agreement for a sale. The minds of the parties either met in writing or not at all. No contract has been entered into either within or without the Statute of Frauds.

Several motions were made in behalf of the plaintiff to strike out certain testimony upon which decision was reserved. The plaintiff's motion to strike out certain testimony of the witness Harris in relation to customs of banks in Rochester to have purchase offers for real estate submitted to them approved by their attorneys is granted, and the testimony stricken from the record. The plaintiff's motions to strike out certain testimony of the witnesses Wile, Wild, Littel and Harris are denied. In so far as this testimony relates to conversation between representatives of the bank and Klonick it is competent to show what was said for the purpose of resolving ambiguities in the letter, Exhibit 4, if the letter is, on its face, susceptible of any construction other than that the matter was still left open. This conversation was likewise competent to show that the statements were not made to Klonick by Wile which Maloney testified Klonick stated that Wile had made to him, inasmuch as Klonick possessed no ostensible authority to make representations on behalf of the bank in regard to the execution of the instrument, and it was open to the bank to show that he possessed no actual authority. Inasmuch as plaintiff had no right to assume that the bank had executed the modified acceptance, Exhibit 3, the conversations between Wile and Harris were competent to show what actually occurred.

The complaint should be dismissed upon the merits, with costs.