**15** 1058 Corporation, Respondent, v Enrique Ergas et al., Appellants, and Dennis Karr et al., Counterclaim Respondents.—Order of the Supreme Court, New York County (Carol H. Arber, J.), entered November 16, 1990, which granted plaintiff's motion for summary judgment and denied defendants' cross-motion for summary judgment dismissing the complaint, is unanimously modified, upon the law, to the extent of denying plaintiff's motion for summary judgment, and otherwise affirmed, without costs.

At issue is whether the sale by the plaintiff cooperative corporation of shares for apartments 1C and 1D at 1056 Fifth Avenue in Manhattan included a six foot by seven foot room located between the building's lobby and the area which all parties acknowledge encompasses apartments 1C and 1D. Plaintiff contends that the room is a mail room and part of the common area, as set forth in the building's 1970 Certificate of Occupancy.

Defendant Enrique Ergas, M.D. and his wife Joscelyn purchased the shares for apartments 1C and 1D through Nathan Friedman, a broker engaged by the cooperative and contacted by the defendant.* Friedman offered the apartments as a medical office suite, the use at the time by Philip Strax, M.D. Dr. Ergas visited the premises during business hours. He observed Strax's staff use or pass through the room at issue and noted that files were maintained there also. It is undisputed that Friedman unequivocally represented to Dr. Ergas that the room was included. He even showed the defendant a floor plan to that effect. However, Friedman received this floor plan from an architect and not the cooperative. It is alleged in Friedman's affidavit that the cooperative, through its board of directors (hereinafter "board"), had authorized this representation because Robert Kilby, then president of the board,

---

* It is clear from the record that Mrs. Ergas did not play an active role in this transaction. Therefore, "defendant" will refer to Dr. Ergas and "defendants" will be used with respect to actions by Dr. and Mrs. Ergas as litigants.

"agreed" that the room was included. There is no affidavit or deposition testimony from Kilby, now deceased, in the record. In an affidavit by Dr. Strax it is stated that although he did keep a few items in the "mail room", it was always understood to be a common area belonging to the plaintiff. The defendant never spoke to Dr. Strax or any board member about the room prior to his purchase.

By the contract of sale dated May 27, 1980 and the June 13, 1980 proprietary lease, both signed by the plaintiff, Dr. Ergas purchased apartments 1C and 1D. Neither document provided any details or specifications of the space beyond the designation apartments 1C and 1D. There is no prospectus describing the premises in the record.

In late summer of 1980 Dr. Ergas began occupancy of the premises and placed personal items in the disputed room. By letter dated December 12, 1980, plaintiff asserted its claim to the room and requested that defendant's property be removed. By letter dated December 29, 1980, the defendant responded through counsel that he owned the room and that he had permitted building staff access only as a courtesy, which would cease in light of the plaintiff's claim. In June 1981 the board submitted two letter agreements to defendant which acknowledged that his use of the room was only by its permission, revocable at will. Dr. Ergas never signed either of the agreements.

Despite this apparent failure to resolve the matter, neither party took any further action until the instant litigation. In the interim, the parties shared the space. Dr. Ergas used the room as a vestibule, i.e., an entrance/exit to the lobby and an area to store such items as a photocopy machine. The building staff continued to store doorman's coats there and to use it for coffee and lunch breaks. It should also be noted that there is a steel door between the room and the lobby. The steel door remained unlocked and it is not disputed by defendant that only building staff had a key to that door.

In 1988 the board decided to expand its use of the room to include storage of packages delivered and to be picked up. This would allow the doorman to handle these packages without leaving the lobby unattended. Upon defendant's refusal to vacate the room, this litigation was commenced.

The IAS court granted plaintiff's motion for summary judgment finding that it was entitled to possession because (1) there was no issue of fact as to whether the board had authorized the representation that the room was included since Friedman did not claim board approval and there was no evidence to support such a claim, (2) defendant's reliance upon Friedman's representation failed to raise an issue of fact because the board never authorized the representation and,

therefore, was not bound by it, and (3) defendant's use of the space was as a mere licensee. Defendant's cross-motion to dismiss was denied by the IAS court on the grounds that the issues raised by defendants were more properly asserted against the broker and failed to raise an issue of fact to defeat plaintiff's motion.

We disagree that this action can be resolved properly on a motion for summary judgment. On this appeal defendants argue that either the vestibule is a part of the suite as a matter of law or, alternatively, that there is a triable issue of fact. Defendants further contend that Friedman had either real or apparent authority to bind the plaintiff and that plaintiff ratified Friedman's representation. Plaintiff contends that the mail room was a part of the common areas, that a broker cannot bind a seller (no real or apparent authority) and that there is no triable issue of fact regarding ratification.

The problem here lies in the failure of the contract of sale and/or the proprietary lease to specify the space to be included in apartments 1C and 1D. Since the pertinent written instruments are ambiguous as to this point, extrinsic evidence that is probative of the parties' intent may be considered. *(Belknap v Witter & Co.,* 61 NY2d 802, 804 [1984].) Given the conflicting nature of the extrinsic evidence, which hinges on credibility determinations, summary disposition is not appropriate.

This conclusion is not affected by the arguments raised concerning Friedman's representation that the room was included in the sale. Whether Friedman was authorized to make this representation is separate and apart from the ambiguity in the written instruments. We agree with the IAS court to the extent that it found *Friedman v New York Tel. Co.* (256 NY 392 [1931]) controlling. It is clear from the record that here Friedman was acting as a broker authorized to enter into negotiations but not authorized to sell or convey the apartments. The board had to approve the application submitted by Friedman for Dr. Ergas and the contract of sale and proprietary lease were executed by the parties. Friedman did not have the apparent authority to bind the cooperative contractually because there is no evidence that the board represented, misrepresented or otherwise acted to create the impression for the defendants that Friedman had such authority. *(Ford v Unity Hosp.,* 32 NY2d 464 [1973]; *Hallock v State of New York,* 64 NY2d 224 [1984].)* Friedman was simply acting as the broker and his own representations could not alter that status. *(Stone v United States Tit. Guar. & Indem. Co.,* 159

App Div 679 [1913], *affd* 217 NY 656 [1916].) Therefore, in the absence of any real or apparent authority of the broker to bind the seller, plaintiff herein cannot be held liable for any false representation by Friedman. *(Friedman v New York Tel. Co.,* 256 NY, *supra,* at 394; *De Roche v Dame,* 75 AD2d 384 [1980], *lv dismissed* 51 NY2d 821 [1980].)

With respect to determining the intent of the parties, Friedman's assertion that Kilby, as the board president, agreed that the room was to be included in the sale may be probative evidence of his understanding of what was approved by the board and may be admissible as an admission against the plaintiff. The 1970 Certificate of Occupancy and the prior use of the premises are not conclusive because the board could have altered its position. This is certainly possible in light of the fact that the suite may have been viewed as more marketable with the additional "vestibule", as indicated in the Friedman affidavit. There is also conflicting evidence in this record as to the physical layout of the premises. In addition, different inferences can be drawn from the failure of the plaintiff to obtain a resolution of this dispute when it first arose in 1980. Consequently, there is a triable issue of fact as to the intent of the parties. Accordingly, summary judgment is not available to either party. Concur—Sullivan, J. P., Rosenberger, Kupferman, Ross and Smith, JJ.

