## In re LOCKWOOD ENTERPRISES, INC., Debtor.

### Bankruptcy No. 84 B 20019.

United States Bankruptcy Court, S.D. New York.

Sept. 18, 1985.

Charles T. Bistany, White Plains, N.Y., for Frank Pezzo.

Jules Teitelbaum, P.C., New York City, for trustee; Miriam Teitelbaum, New York City, of counsel.

## DECISION ON MOTION FOR ORDER DIRECTING PAYMENT OF MONIES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Frank Pezzo has moved for an order directing the operating trustee of Lockwood Enterprises, Inc., the above-captioned Chapter 11 debtor, to pay to him the sum of $12,000 which Mr. Pezzo claims he loaned to the debtor for the purpose of meeting its payroll requirements. The operating trustee opposes the motion on the ground that Mr. Pezzo did not make a valid loan to the Chapter 11 debtor. The trustee did not object to the fact that an action to recover money or property is defined as an adversary proceeding under Bankruptcy Rule 7001(1) which requires the issuance of a summons and complaint. Therefore, the court will treat the moving papers as a complaint and will determine the issues on the basis of the testimony and evidence adduced at the hearing.

## FINDINGS OF FACT

1. The debtor, Lockwood Enterprises, Inc., filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 20, 1984. The debtor operates an adult residential home in New Rochelle, New York.

2. Richard J. Sanchez was the sole shareholder and president of the debtor. He also acted as the administrator of the nursing home.

3. The records in this court reflect that Frank Pezzo acquired the stock owned by Richard J. Sanchez with respect to CCN Realty, Inc., the corporation which owned the land and building where the debtor operates its adult nursing home. Mr. Pezzo has filed a prepetition claim against the debtor as an unsecured general creditor in the amount of $1,259,400.00 which states that he "loaned funds to debtor by delivering proceeds to Richard Sanchez as President of debtor corporation and said loaned funds were used to pay debts and operate [sic] expenses of debtor."

4. By order dated September 17, 1984, the court granted the application of the United States trustee for the appointment of Jules Teitelbaum as operating trustee of the debtor. The trustee was authorized to exercise all of the powers delineated under 11 U.S.C. § 1106(a) and was given the authority to operate the debtor's business pursuant to 11 U.S.C. § 1108.

5. In October of 1984, one month after the appointment of the operating trustee, Mr. Sanchez approached Mr. Pezzo and asked for a loan of $12,000 to be used by the debtor to meet its payroll and other operating expenses. Mr. Pezzo testified that Mr. Sanchez said that the loan would be repaid the following month.

6. Mr. Pezzo then gave to Mr. Sanchez two bank checks, each dated October 29, 1984 in the sum of $6,000, for a total of $12,000, made payable to Lockwood Manor. (Exhibit A in evidence).

7. The debtor's bookkeeper testified that Mr. Sanchez had previously taken from her thirty eight social security checks payable to various residents of the nursing home, for a total of $12,552.55 (Exhibit 1 in evidence). Mr. Sanchez advised the bookkeeper that he would replace these checks. When the bookkeeper later asked for the

replacement checks, Mr. Sanchez gave her the two bank checks totalling $12,000 (Exhibit 1 in evidence), which the bookkeeper deposited in the debtor's bank account with The Manufacturers Hanover Trust Co. The bookkeeper then credited the money to the residents to whom the thirty eight social security checks were made payable.

8. Mr. Pezzo conceded that when he gave the two checks to Mr. Sanchez he knew that the debtor was functioning under the aegis of the bankruptcy court and that Mr. Teitelbaum was the appointed operating trustee. He also knew that Mr. Sanchez was the administrator of the nursing home and an employee of the operating trustee.

9. There was no writing to evidence the transaction between Messrs. Sanchez and Pezzo other than the two bank checks totalling $12,000. No court authorization was ever sought or obtained with respect to the transaction.

10. There was no proof that delivery of the two checks for $12,000 by Mr. Pezzo to Mr. Sanchez for the payment of the debtor's payroll and other expenses occurred in the ordinary course of the debtor's business or, that it was usual and customary for the debtor to borrow money in the sum of $12,000 for such purposes.

11. The operating trustee has refused to honor Mr. Pezzo's request for payment of the $12,000 in question.

## DISCUSSION

Mr. Pezzo seeks to recover $12,000 from the operating trustee of this Chapter 11 debtor as a result of what appears to be a personal transaction between himself and the former administrator of the nursing home. There are missing pieces to this puzzle and the surrounding circumstances are curiously suspicious. Mr. Pezzo testified that the former administrator of the nursing home, Mr. Richard J. Sanchez, approached him in December of 1984 and asked to borrow $12,000 until the next month to meet the payroll and operating expenses of the adult nursing home. Mr. Pezzo further testified that he knew at that time that the nursing home was a Chapter 11 debtor and that the Bankruptcy Court had appointed an operating trustee. Mr. Sanchez did not testify. There was no proof of any note or writing to support this transaction other than two bank checks payable to the nursing home, totalling $12,000. Mr. Pezzo did not issue his personal checks on his own bank account. The money was requested by Mr. Sanchez at a time when thirty eight social security checks payable to residents of the nursing home, in the total amount of $12,552.55, were missing as a result of Mr. Sanchez having previously taken them from the debtor's bookkeeper with the promise that he would replace them. There was no proof that the operating trustee was informed that Mr. Sanchez had taken the thirty eight social security checks. There was no proof that the operating trustee had been apprised that Mr. Pezzo had advanced to Mr. Sanchez two bank checks totalling $12,000, payable to the debtor to meet payroll and operating expenses. There was no proof that it was usual or customary practice for the debtor to borrow money to meet its payroll and operating expenses or, that Mr. Sanchez had been given the authority to borrow on behalf of the debtor. There was no explanation given why Mr. Pezzo was willing to make a $12,000 unsecured loan to a Chapter 11 debtor without first consulting with the operating trustee after Mr. Pezzo had been informed by Mr. Sanchez that the Chapter 11 debtor did not have sufficient funds to meet its payroll and operating expenses. Mr. Pezzo knew that an operating trustee had previously been appointed. Significantly, there was no proof of any order by this court approving the transaction and authorizing the debtor or the operating trustee to borrow $12,000 from Mr. Pezzo or even that such a course had been considered.

With certain exceptions[1] not applicable to the issue in question, claims against a

1. Certain post-petition claims are treated as pre- petition claims under 11 U.S.C. § 502, such as

Chapter 11 debtor may not be allowed unless they existed before the filing of the Chapter 11 petition. 11 U.S.C. § 502(b). However, the actual, necessary costs and expenses of preserving the estate may be allowed in accordance with 11 U.S.C. § 503(b)(1)(A). The action commenced by Mr. Pezzo is not based on an administrative expense claim. He seeks to recover for unsecured credit totalling $12,000, which he allegedly advanced for use in the debtor's postpetition business.

When a trustee is authorized to operate a Chapter 11 debtor's business pursuant to 11 U.S.C. § 1108, as in this case, the trustee may be authorized to incur unsecured debts other than in the ordinary course of business after notice and a hearing pursuant to 11 U.S.C. § 364(b). In light of the fact that there was no proof that the debtor normally or customarily borrowed funds to meet payroll and operating expenses, it follows that a loan to the debtor to meet such expenses was not in the ordinary course of its business and had to satisfy the conditions of notice and hearing prescribed under 11 U.S.C. § 364(b). In this case neither notice nor an opportunity for a hearing with respect to the $12,000 alleged loan were sought or given to authorize this extraordinary transaction.

Mr. Pezzo relies upon the fact that Mr. Sanchez was the former administrator of the debtor's nursing home and that he acted as an agent with apparent authority to bind his principal, the operating trustee, when he borrowed the $12,000. Mr. Pezzo overlooks the nature of the transaction, which involved the extraordinary borrowing of funds allegedly for the purpose of meeting the payroll and operating expenses of a Chapter 11 debtor under the control of a court-appointed operating trustee. Mr. Pezzo knew who the operating trustee was and was not misled by any conduct on the part of the alleged agent, Mr. Sanchez. *See Council Commerce Corp. v. Sterling Navigation Co., Ltd., (In re Sterling Co.,*

*Ltd.)* 444 F.Supp. 1043 at 1048–1049 (S.D. N.Y.1977) (where District Judge Duffy affirmed Bankruptcy Judge Ryan's finding that a failure to show a third party's reliance on such a manifestation of the principal was fatal to that party's claim of apparent authority).

The general rule is, that one who deals with an agent does so at his peril, and must make diligent inquiry as to the agent's authority to enter into the transaction. *General Overseas Films, Ltd., v. Robin International, Inc.,* 542 F.Supp. 684 (S.D. N.Y.1982) *aff'd without op.* 718 F.2d 1085 (2d Cir.1983); *Strip Clean Floor Refinishing v. New York District Council No. 9 Brotherhood of Painters,* 333 F.Supp. 385 (E.D.N.Y.1971); *Ford v. Unity Hospital,* 32 N.Y.2d 464, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973); *Deyo v. Hudson,* 225 N.Y. 602, 122 N.E. 635 (1919). Had Mr. Pezzo contacted the operating trustee before he advanced $12,000 to Mr. Sanchez, Mr. Pezzo would have learned that Mr. Sanchez was not authorized by the operating trustee to borrow money to meet payroll and operating expenses. In addition, the operating trustee would have been alerted to the fact that there was a shortage of funds available to pay operating expenses because Mr. Sanchez had appropriated from the bookkeeper thirty eight social security checks totalling $12,552.55. The operating trustee would then have informed Mr. Pezzo that the debtor could not engage in this extraordinary transaction without first obtaining court approval pursuant to the notice and hearing requirements in 11 U.S.C. § 364(b). Having chosen to deal with Mr. Sanchez in this unusual fashion, Mr. Pezzo cannot now look to the debtor and the operating trustee for reiersement of what appears to be a personal transaction with Mr. Sanchez now that the latter's services have been terminated.

claims for reimbursement or contribution that became fixed post-petition (§ 502(e)(2) ); involuntary gap claims (§ 502(f) ); claims arising out of the rejection of executory contracts or unexpired leases (§ 502(g) ); claims arising from the trustee's recovery of property (§ 502(h) ); certain priority tax claims (§ 502(i) ).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

2. The plaintiff, Frank Pezzo, has failed to establish that the debtor and/or the operating trustee in this case should be liable for the $12,000 that the debtor's former administrator, Richard J. Sanchez, allegedly borrowed to meet payroll and operating expenses of the debtor's nursing home in October of 1984.

3. Frank Pezzo's application to recover $12,000 from the operating trustee is denied.