In re Marion J. PERRET and Annette Perret, d/b/a Hill Haven Farm, Debtors.

J. Reiley McDONALD, Trustee, Plaintiff,

v.

Wilbur MANNING, Defendant.

Bankruptcy No. 82–10055.

85 Adv. 8008.

United States Bankruptcy Court, N.D. New York.

Aug. 22, 1986.

Carter, Ledyard & Milburn, New York City (James Rayhill and Marta S. Lively, of counsel), for J. Reiley McDonald, Chapter 11 Trustee.

Paul L. Banner, Poughkeepsie, N.Y., for Wilbur Manning, defendant.

## DECISION ON COMPLAINT SEEKING ORDER TO RECOVER PROPERTY

HOWARD SCHWARTZBERG, Bankruptcy Judge, sitting by designation.

J. Reiley McDonald, the trustee in this confirmed Chapter 11 liquidation case, seeks to recover possession of various items of farm equipment that were stored by the debtor for safekeeping in the possession of the defendant, Wilbur Manning, at his neighboring farm. The defendant, in turn, seeks to recover as an administrative expense the cost of maintaining and servicing the items in question, including an old horse and a pet pony which the debtors sought to preserve after the trustee indicated he would abandon the animals because they were of no value and were a burden to the estate. The horse and pony, known as Mandy and Jack, were destroyed by the defendant about a month ago when he realized that the trustee was not going

to reimburse him for the expenses of maintaining and feeding the animals for nearly two years. The farm equipment consists of 118 rolls of page wire, 125 posts, a snow blower, a John Deere tractor, a disc harrow, a seeder and a four wheel trailer.

This case was commenced on January 8, 1982 by the filing of a voluntary joint Chapter 11 petition by the debtors in the Bankruptcy Court in the Northern District of New York on January 8, 1982. Pursuant to an Administrative Order, dated June 16, 1986, the Judicial Council of the Second Circuit approved the temporary assignment of this Bankruptcy Judge in the Southern District of New York "to the Bankruptcy Court of the Northern District of New York to preside over the matter of Marion Perret and Annette Perret, d/b/a Hill Haven Farm, 82–10055." This temporary assignment resulted when the presiding Bankruptcy Judge recused himself from this case and signed an order, dated May 21, 1986, directing the Clerk of the Northern District to transfer the case to the Chief Judge of the District Court for the Northern District of New York for reassignment to another Bankruptcy Judge.

## FINDINGS OF FACT

1. Prior to the appointment of the Chapter 11 trustee, the debtors, Marion J. Perret and his wife, Annette Perret, were in possession of the assets of this estate, including a farm in Columbia County, New York, known as Hill Haven Farm. The debtors were in the business of raising, breeding and selling thoroughbred horses.

2. On February 25, 1983, the Bankruptcy Court signed an order granting the creditors' committee's application for the appointment of a Chapter 11 trustee. J. Reiley McDonald was appointed as the Chapter 11 trustee in this case. This appointment order was supplemented on March 7, 1985, at which time the trustee's bond was fixed at $150,000.

3. On August 15, 1983, the Chapter 11 trustee filed an application with the court for an order directing the debtors to vacate Hill Haven Farm and to pay back rent to the trustee. On August 25, 1983 the court signed an order authorizing the trustee to sell property of the estate free and clear of all liens at a public auction to be held on September 12, 1983. Hill Haven Farm was sold on September 12, 1983 for $900,000. On October 4, 1983, the trustee filed a Chapter 11 plan of reorganization which proposed a complete liquidation of the estate. The trustee's second amended plan of reorganization was confirmed on March 7, 1984.

4. Just prior to the public auction sale of Hill Haven Farm, on September 12, 1983, the trustee informed the debtors that he was not interested in keeping or selling two horses known as Mandy and Jack. Jack was a family pony that limped. Mandy was a thoroughbred horse more than 20 years old. Both horses were of no value to the estate and burdensome to maintain. The trustee advised the debtors that they could take the animals if they wished; otherwise they would be destroyed. The trustee also agreed to pay the transportation charges for conveying the horses to wherever the debtors might want to have the horses shipped.

5. The debtors then had a conversation with the defendant, Wilbur Manning, with respect to temporarily storing the horses at his farm, which was about six miles from Hill Haven Farm. The debtors informed the defendant that they had to vacate Hill Haven Farm because it was to be sold by the Chapter 11 trustee on September 12, 1983. The defendant was apprised that the trustee had hired security guards to protect the estate because there was a threat that property might be lost. Therefore, the debtors wished to store temporarily some property at the defendant's farm, including Jack and Mandy. The defendant agreed with the debtors to accept some property for temporary storage for a reasonable fee, which the defendant says amounts to $15 per day per horse.

6. The debtors then shipped the two horses, Jack and Mandy, and some farm equipment to the defendant's farm for tem-

porary storage prior to the public auction of Hill Haven Farm on September 12, 1983.

7. On February 26, 1984, the defendant mailed a bill to the debtor, Marion Perret, addessed to the latter in Louisiana, which read:

DEAR MARION:

STRANGE AS IT MAY SEEM IT HAS BEEN SIX MONTHS ALREADY SINCE YOU HAVE LEFT OUR AREA. AND I HAVE NOT HAD THE TIME TO SUBMIT A BILL FOR THE HORSES AND EQUIPMENT YOU HAVE LEFT WITH ME, SO THE FOLLOWING IS AN ITEMIZED LIST OF WHAT IS DUE AS OF MARCH 1, 1984.

| | |
|---|---|
| 2 HORSES @ $30.00 PER DAY FROM 9/12/82 ................... | $5130.00 |
| EQUIPMENT STORAGE @ $500 PER MONTH.................... | 3000.00 |
| TOTAL ........................... | $8130.00 |

VERY TRULY YOURS,
WILBUR MANNING

8. The debtor, Marion Perret responded to defendant's letter and said:

Dear Wilbur:

I am in receipt of your board and storage statement in the amount of $8,130 from September 12, 1983 to March 1, 1984. As you probably already know, our estate (Annette and Marion Perret) is totally managed by a Trustee named J. Riley McDonald who had requested our assistance to locate a place for storage and care of the farm equipment and the two horses, MANDY and JACK. It is apparant [sic] he has not contacted you in nearly six months, therefore, would suggest you file a Proof of Claim directly with the Bankruptcy Court in Poughkeepsie, New York, without delay as a confirmation hearing was held February 23 and 24, 1984.

Very truly yours,
/s/ Marion
M.J. Perret

9. On March 12, 1984, the defendant filed an administrative expense claim based on a lien for property held and for storage and care in the then sum of $8130, calculated as a continuing charge at the rate of $15 per day per horse and $500 per month for equipment storage.

10. On September 5, 1984, the defendant addressed a telegram to Judge Jeremiah Berk of the United States Bankruptcy Court in Poughkeepsie, New York, which read:

RE; HILLHAVEN FARMS, CASE # 82-10055

AS A CREDITOR IT IS DIFFICULT TO UNDERSTAND HOW THIS CASE IS BEING ADMINISTERED. TODATE I HAVE NOT RECEIVED ANY PAYMENTS TOWARDS SETTLEMENT OF THIS DEBT. NOR HAVE I RECEIVED FROM YOUR COURT ANY ACKNOWLEDGEMENT OF MY CLAIM NOR THE SIMPLE COURTESTY OF NOTICES, PLEADINGS OR ANY FINANCIAL INFORMATION REFLECTING THE CONDITION AND STATUS OF THIS ESTATE. AS A PARTY-IN-INTEREST I UNDERSTAND I HAVE A RIGHT TO SUCH, AND RESPECTFULLY REQUEST SAME WITHOUT DELAY BY RETURN MAIL TO THE BELOW LISTED ADDRESS AS WELL AS ALL FUTURE NOTICES OF ANY ACTIVITY.

WILBUR MANNING
BOX 83A1
ANCRAM NY 12502

11. On October 24, 1984, Trustee McDonald responded to the defendant as follows:

Dear Mr. Manning:

In attempting to pay off the balance of the administrative claims against the Bankruptcy Estate of Marion and Annette Perret, we have examined your Proof of Claim. In order for us to properly identify the validity of your claim we will need to know exactly what you are storing for the Perrets on your farm.

I am sorry to be asking you for this information at such a late date, however, the Perrets never disclosed to us what items they had placed on your farm for storage. Therefore would you please send us a fully itemized inventory list of

these items and the exact dates that these items were put in your possession.

Sincerely,
/s/ J. Reiley McDonald
J. Reiley McDonald
Trustee

12. The defendant then informed the trustee as to the items held for storage and the charges for caring for these items in a letter to the trustee, dated October 24, 1984, which read as follows:

DEAR MR. MCDONALD:

I MAKE REFERENCE TO THE ABOVE LETTER IN WHICH YOU RE-QUEST AN INVENTORY OF WHAT MR. PERRET HAS LEFT ON MY FARM IN STORAGE ON SEPT. 12, 1983.

MR. PERRET LEFT IN OUR CARE 118 ROLLS OF PAGE WIRE, 125 POSTS, A SNOW BLOWER, JOHN DEERE TRACTOR, DISC HARROW, SEEDER, AND A FOUR WHEEL TRAILER.

THERE WERE ALSO 2 HORSES DE-LIVERED BY YOU, MANDY & JACK. WE WERE TO RECEIVE $15.00 PER DAY FOR EACH HORSE, AND $500.00 PER MONTH FOR THE EQUIPMENT.

I WOULD APPRECIATE A QUICK SETTLEMENT OF THIS BILL AND REMOVAL OF THESE ITEMS FROM MY LAND.

VERY TRULY YOURS,
/s/ Wilbur C. Manning
WILBUR C. MANNING

13. The trustee responded by letter dated November 1, 1984, which expressed surprise that the defendant had custody of farm equipment belonging to the estate and demanded a return of the equipment. The trustee denied any responsibility for storage and care charges. This letter read as follows:

Dear Mr. Manning:

I am in receipt of your letter regarding the items which Marion Perret left on your farm for storage on September 12, 1983 and the amount that you feel that the Bankruptcy Estate of Marion and Annette Perret owes to you for storage.

Mr. Perret delivered all of these items to your farm on his own initiative and at no time was I aware that these items were in storage on your farm or of what the inventory actually consisted. It was not until we received your letter claiming storage fees that I was aware that you did indeed have 118 rolls of page wire, 125 posts, a snow blower, John Deere tractor, disc harrow, seeder and a four-wheel trailer. I was, however, aware that the two horses, Mandy and Jack, had been delivered to your farm pursuant to an agreement reached between yourself and Mr. Perret. Please be advised that Mr. and Mrs. Perret were given Mandy and Jack in September of 1983 because they were a non-productive drain on this Estate and otherwise the Estate would have been forced to destroy both of these animals.

Because I, as Trustee for this Bankruptcy Estate, was never included in the negotiations for storage fees, and because I was unaware that the aforementioned items were actually located on your farm, I do not feel that this estate owes you any storage fees whatsoever. Furthermore, this Estate will not be held liable for any agreements reached, without authorization between yourself and Mr. Perret regarding boarding fees for the two horses Mandy and Jack. This may be a matter that will have to be brought before the Federal Bankruptcy Judge of the Northern District of New York.

Please be advised further that all of the items previously mentioned as being in storage on your farm are the property of the Bankruptcy Estate of Marion and Annette Perret. I will expect all of these items to be returned to the Estate and in a condition similar to that in which they were delivered to your property.

Mandy and Jack are both the property of the Perrets who have been discharged from this Estate and you should contact them for instructions as to their disposition.

Please contact me if you have any further questions. Otherwise I will be in touch with you as soon as possible with instructions.

> Sincerely,
> /s/ J. Reiley McDonald
> J. Reiley McDonald
> Trustee

14. In a complaint filed December 30, 1985, the trustee seeks an order pursuant to 11 U.S.C. § 542(a) directing the defendant to account for the property of the estate which is in his possession and to deliver such property or the value of the property to the trustee.

15. The defendant seeks to recover as an administrative expense the cost of caring for the two horses, Jack and Mindy, at the rate of $15 per day per horse from September 12, 1983 until they were destroyed last month, in the sum of $26,190. The defendant also seeks to receover from the trustee the cost of storing the debtors' farm equipment at the rate of $500 per month, amounting to $14,500. Thus, the defendant asserts an administrative expense claim totalling $40,690, as of February 1, 1986.

## DISCUSSION

There came a time when trustee McDonald sold a farm. On this farm were two horses known as Jack and Mandy. Jack fell down and broke his leg and could not walk. Mandy was more than twenty years old and could not race. Both horses were of no value to McDonald, who allowed the debtors to take them or they would be destroyed. On this farm there was also some farm equipment, including a tractor and a trailer, which did have value and which McDonald wanted to retain. However, the debtors arranged with the defendant to store Jack and Mandy as well as the tractor and trailer and some other equipment for a temporary period. McDonald seeks to recover the farm equipment from the defendant, who asserts an administrative expense claim for storage costs. Jack and Mandy were destroyed by the defendant after nearly two years of unreimbursed storage charges.

The farm equipment items which the debtors stored with the defendant are property of the estate within the meaning of 11 U.S.C. § 541(a) and must be returned to the trustee as required under 11 U.S.C. § 542(a). There is no dispute as to this point. The only issue for determination is whether the defendant is entitled to recover as an administrative expense his charges for storing and caring for the equipment and the two horses. An allowance for administrative expenses is authorized under 11 U.S.C. § 503(b) for "the actual, necessary costs and expenses of preserving the estate ..."

## JACK AND MANDY

Neither Jack nor Mandy were of any value to the estate. Indeed, trustee McDonald informed the debtors that these horses were burdensome to the estate and would be destroyed unless the debtors wished to keep them, which they did. At this point the trustee should have given notice of his intent to abandon the horses in accordance with the provisions of 11 U.S.C. § 554(a) and Bankruptcy Rule 6007. The trustee's failure to follow these provisions is not fatal because no creditor, title holder, or any party in interest in this case was adversely affected by the trustee's informal abandonment of the horses to the debtors. Even if Jack and Mandy were regarded as property of the estate because the trustee failed to give notice of abandonment, as required by 11 U.S.C. § 554(a) and Bankruptcy Rule 6007(a), the storage costs incurred by the defendant for keeping Jack and Mandy would not qualify as an administrative expense under 11 U.S.C. § 503(b)(1)(A). Such costs did not benefit the estate and would not have been incurred by the trustee, who would have destroyed the horses if the debtors did not take them. A claim may be "allowed as an administrative expense only to the extent that the actual use of such property represents benefit to the bankruptcy estate." *Broadcast Corporation of Georgia v. Bro-*

*adfoot (In re Subscription Television of Greater Atlanta)*, 789 F.2d 1530, 1532 (11th Cir.1986).

### THE FARM EQUIPMENT

■ The trustee was surprised to learn that the debtors had arranged to store with the defendant 118 rolls of page wire, 125 posts, a snow blower, a John Deere tractor, a disc harrow, a seeder and a four-wheel trailer. The trustee had only allowed the debtors to keep the two horses, Jack and Mandy. The defendant knew that the debtors' property was to be sold at public auction by the Chapter 11 trustee and had no proper reason to believe that the trustee would assume the storage charges that the defendant negotiated with the debtors. Indeed, the defendant originally looked to the debtor, Marion Perret, for reimbursement of the storage charges, as evidenced by his letter dated February 26, 1984 [Exhibit 8 in evidence]. It was only after Marion Perret wrote to the defendant and suggested that he file a proof of claim with the Bankruptcy Court that the defendant asserted an administration expense claim against this estate. If the defendant seriously believed that the debtors were authorized by the Chapter 11 trustee to store the farm equipment and negotiate the costs for such storage, the defendant should have made diligent inquiry as to the debtor's authority to enter into the transaction. *In re Lockwood Enterprises, Inc.*, 52 B.R. 871, 13 B.C.D. 610 (Bankr.S.D.N.Y.1985). Had the defendant contacted the trustee he would have learned that the debtors were not authorized to remove any farm equipment from the estate. In addition, the trustee would have been alerted to the fact that the equipment in question was removed by the debtors from the pending public auction. Having chosen to deal with the debtors in this fashion, the defendant may not now look to the trustee for reimbursement for what appears to be a personal transaction with the debtors. *In re Lockwood Enterprises, Inc.*, 52 B.R. at 874, 13 B.C.D. at 612. Accordingly, the defendant's claim for storage charges for the equipment is not an administrative expense and is not a valid claim against this estate.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (E).

2. The Chapter 11 trustee has satisfied his burden of proving that he is entitled to an order pursuant to 11 U.S.C. § 542(a) providing that the defendant, Wilbur Manning, account for the property of the estate which is in the defendant's possession or control and deliver such property, or the value of such property, to the Chapter 11 trustee.

3. The defendant has failed to establish that his claim for storing the two horses, Jack and Mandy, and the farm equipment in question is an administrative expense within the meaning of 11 U.S.C. § 503(b)(1)(A) or that such claim is allowable against this estate.

SETTLE ORDER on notice.