Burke, J.
The issue on this appeal is whether the unauthorized act of a foreign insurance agent in delivering into this State a cover letter for a policy which was both beyond the scope of and in direct cpntravention of its agency agreement is sufficient under due process standards to subject its principal, a non-domiciliary insurer having no other contacts with New York, to the jurisdiction of our courts pursuant to section 59-a of the Insurance Law. In our opinion, it is not.
The opinions of the courts below establish the following as undisputed facts for purposes of this appeal. Third-party defendant Seguros, a Mexican insurance company having its principal place of business in Mexico, does no business in New York and has authorized no one to do or transact any business here in its behalf. Mid-Continent Underwriters, Inc. (hereinafter Mid-Continent), a Louisiana insurance brokerage corporation, is Seguros’ sole managing agent in the United States; and National Reinsurance Agency, Inc. (hereinafter National), an Illinois insurance brokerage corporation, is a limited agent for Seguros, having authority to solicit policies on only certain risks, not including malpractice insurance, in a limited number of States, not including New York.[1] There is no indi *468 cation in the record that either of these agents has had any contact with New York other than that alleged in this action.
In December, 1967, third-party plaintiffs, members of a medical partnership, retained Taylor Stevens Corp. and Max M. Eappaport, New York insurance brokers, to secure for them medical malpractice liability insurance. These domestic brok-. ers, through an affiliate, retained Arnold Ohait, a New Jersey broker, who, in turn, retained National, the Illinois-based limited agent of Seguros, to obtain said malpractice liability insurance.
On January 2,1968, National attempted to secure the requested coverage through Mid-Oontinent, the United States agent of Seguros, but the proposal was immediately rejected by Mid-Continent on the ground that neither Mid-Continent nor, obviously, National, were authorized by Seguros to issue such a policy. Notwithstanding this rejection and the limitations in its agency agreement, National, on January 16, 1968, issued a cover letter, which it sent to the third-party plaintiffs in New York, purporting to bind Seguros to a three-year $100,000/ $300,000 malpractice policy, covering the period January 1,1968 to January 1, 1971. Upon subsequent discovery of National’s action, Mid-Continent issued to the third-party plaintiffs a 10-day cancellation notice, effective March 24,1968; and as a result of this incident, Seguros canceled its agency agreement with National. There is no evidence presented and Seguros flatly denies that it or its agents ever received a premium on the alleged policy.
In February of 1970, the underlying action was commenced against the third-party plaintiffs, alleging malpractice on their part in February of 1968 — during the two-month period prior to Seguros’ cancellation notice when, under the terms of the cover letter issued by National, the malpractice insurance was allegedly in effect. The third-party action was then commenced by personal service upon Mid-Oontinent in Louisiana charging that, by virtue of the policy purportedly issued by National, Seguros was bound to defend and indemnify the third-party plaintiffs in the malpractice action. Seguros then made this motion to dismiss, urging a lack of in personam jurisdiction as to it.[2]
*469 In denying the motion to dismiss, Special Term relied upon section 59-a of the Insurance Law[3] ** for the proposition that in issuing an insurance policy to a New York resident, a foreign insurer “ does business in this state and is subject to its jurisdiction.” Citing Zacharakis v. Bunker Hill Mut. Ins. Co. (281 App. Div. 487), the court held that “ a singular act brings the carrier within the statute.” Regarding Seguros’ contention that the issuance of the cover letter was an unauthorized act of its limited agent and therefore insufficient to bring Seguros, the principal, within New York’s jurisdiction, the court stated that “ although National may have exceeded its actual author *470 ity by issuing the cover note insuring New York residents * * # its apparent authority nevertheless established a nexus with this state for jurisdictional purposes binding on Seguros * * * sufficient to satisfy the minimum contacts requirements of due process (McGee v. International Life Ins. Co., [355 U. S. 220]).”
The Appellate Division unanimously affirmed the order, concluding, as did Special Term, that notwithstanding the unauthorized nature of National’s action, Seguros was bound, at least for purposes of jurisdiction, under the doctrine of apparent authority. The court was not, however, unaware of the tenuous nature of its ruling, noting (p. 571): “ We recognize that the facts of this case test the very outer limits of due process requirements (see Hanson v. Denckla, 357 U. S. 235; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443). However, in view of the overriding interest of this State in affording its residents effective means of redress in their dealings with foreign and alien insurers, we deem the exertion of jurisdiction herein to be proper (McGee v. International Life Ins. Co., 355 U. S. 220, 223, 224; Insurance Law, sec. 59-a, subd. 1).” Thereafter the Appellate Division granted leave certifying the following question: “ Was the order of this court, dated April 17, 1972, properly made? ”
We cannot agree with the reasoning of the courts below. Since we can find no constitutionally sufficient predicate for an assertion of jurisdiction over the nondomiciliary, third-party defendant Seguros, we answer the certified question in the negative and direct a reversal of the order appealed from.
In adopting section 59-a of the Insurance Law, which provides for substituted service upon a foreign insurance company engaged in any of the acts enumerated in subdivision 2 thereof, the Legislature has defined “ doing business ” in New York by an insurer in terms more broadly inclusive than those applied to other commercial enterprises by CPLR 301 (see Millner Co. v. Noudar, Lda, 24 A D 2d 326, 329). However, neither the respondents nor the courts below suggest that the scope of section 59-a transcends the boundaries of due process as delineated by the Supreme Court in International Shoe Co. v. Washington (326 U. S. 310), McGee v. International Life Ins. Co. (355 U. S. 220), and Hanson v. Denckla (357 U. S. 235). Rather, it is argued *471 that, in the interest of protecting New York residents, section 59-a extends the extraterritorial effect of our courts’ process to the very perimeters of those due process standards — the Appellate Division in this case admitting that the facts herein test the ‘ ‘ outer limits ’ ’ thereof.
The criterion, then, for subjecting a foreign insurance company to our jurisdiction is the “ minimal contacts ” test outlined in International Shoe, McGee and Hanson v. Denckla—the pivotal question being whether the defendant “ purposefully ” availed itself of the “ privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws ” (357 U. S., at p. 253; see, also, Parke-Bernet Galleries v. Franklyn, 26 N Y 2d 13; McKee Elec. Co. v. Rauland-Borg Corp., 20 N Y 2d 377; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N Y 2d 443). And, as the Hanson court emphasized, the requisite contacts with the forum State must result from activities of the defendant, and not those of the party seeking to assert jurisdiction. 1 ‘ The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.” (357 U. S., at p. 253; see, also, Haar v. Armendaris Corp., 31 N Y 2d 1040; Parke-Bernet Galleries v. Franklyn, 26 N Y 2d 13, 19, n. 2; Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N Y 2d 280; Glassman v. Hyder, 23 N Y 2d 354; Katz & Son Billiard Prods. v. Correale & Sons, 20 N Y 2d 903; Standard Wine & Liq. Co. v. Bombay Spirits Co., 20 N Y 2d 13).
On the facts before us, third-party defendant Seguros cannot be said to have purposefully availed itself of the privilege of conducting activities in this State. Indeed, Seguros purposefully avoided any contacts with New York, limiting its agency agreement with National to certain States, excluding New York. Furthermore, when such contacts were proposed by National — acting in behalf of the third-party plaintiffs — Seguros, through Mid-Continent’s rejection, refused to extend itself into our jurisdiction.
Nor can the issuance of the cover letter by National be held to constitute sufficient contacts with New York to justify an assertion of jurisdiction over Seguros. In the first place, it is conceded that National was unauthorized to issue the cover letter, and that Mid-Continent had, in fact, directed it not to issue *472 such a policy. More importantly, however, it is apparent from the record before us that, regarding this transaction, National was acting as agent for the third-party plaintiffs, and not in behalf of Seguros. The third-party complaint itself states that the plaintiffs’ brokers “retained the third party defendant, National Reinsurance Agency, Inc., to obtain said malpractice liability insurance.” Moreover, the cover letter from National to third-party plaintiffs, Barnett A. Greene, M. D. & Associates, clearly indicates that National was acting for said plaintiffs, informing them: ‘ ‘ Acting upon your instruction we have effected the insurance with: ‘ America ’ Cia. De Seguros, S. A.”. Thus, although National was an agent for Seguros, it was, for jurisdictional purposes herein, functioning as an aa;ent for the third-party plaintiffs (cf. Parke-Bernet Galleries v. Franklyn, supra). As noted above, activities on the part of the third-party plaintiffs or their agents cannot constitutionally serve as a basis for jurisdiction over the third-party defendant (Hanson v. Denckla, 357 U. S. 235, supra; Glassman v. Hyder, 23 N Y 2d 354, supra).
Even were we to overlook the fact that National was acting on behalf of the third-party plaintiffs rather than Seguros, we would reverse. The decisions of the courts below predicate jurisdiction over Seguros upon the unauthorized act of National in issuing the cover letter purporting to bind Seguros to the three-year malpractice policy. The justification proffered was the- “ apparent authority ” with which Seguros allegedly clothed National. In light of the facts before us, such justification is unfounded.
The mere creation of an agency for some purpose does not automatically invest the agent with ‘ ‘ apparent authority ’ ’ to bind the principal without limitation (cf. Ernst Iron Works v. Duralith Corp., 270 N. Y. 165; Harriss v. Tams, 258 N. Y. 229; Deyo v. Hudson, 225 N. Y. 602). An agent’s power to bind his principal is coextensive with the principal’s grant of authority. One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority (see Sponge Rubber Prods. Co. v. Purofied Down Prods. Corp., 281 App. Div. 380, affd. 306 N. Y. 776). Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent’s misrepresentations, “ apparent authority ” is not automatically available to the injured third *473 party to bind the principal. Bather, the existence of ‘1 apparent authority ” depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent. As one treatise on New York law states: ‘1 The very basis of the doctrine of apparent authority indicates that the principal can be held liable under the doctrine only where he was responsible for the appearance of authority in the agent to conduct the transaction in question. The apparent authority for which the principal may be held liable must be traceable to him; it cannot be established by the unauthorized acts, representations or conduct of the agent ” (2 N. Y. Jur., Agency, § 89, p. 253).
The facts in the record before us do not support the conclusion that Seguros, through its conduct, misled the third-party plaintiffs so as to justify resort to “ apparent authority.” On the contrary, it appears that Seguros had never issued a policy in New York, nor a malpractice policy elsewhere. At best, the third-party plaintiffs relied upon the misrepresentations of the agent, National, which is an insufficient basis for reliance upon ‘ ‘ apparent authority. ’ ’
Accordingly, the certified question is answered in the negative and the order appealed from should be reversed.
Chief Judge Fuld and Judges Bbeitel, Jasen, Gabbielli, Jones and Wachtleb concur.
Order reversed, with costs in all courts, and the third-party complaint dismissed. Question certified answered in the negative.

. The agency agreement between Seguros and National, which states that the agent "is and shall be deemed an independent contractor ”, limits National’s authority to policies not exceeding “ $25,000.00, as respects Fire and Inland Marine and/or $10,000/$20,000, as respects bodily injury and property damage General Liability and Automobile Liability.”
Geographically, the scope of National’s agency is limited by the agreement to the following States: Illinois, Missouri, Michigan and Indiana; and, by addendum, Ohio, Tennessee, and Georgia.

. There was also a motion to dismiss as against Mid-Continent which was granted by Special Term. The dismissal was affirmed by the Appellate Division and is not the subject of this appeal.

. Section 59-a of the Insurance Law provides as follows: “ 1. The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such state interest, the legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define, for the purpose of this section, what constitutes doing business in this state, and also exercises powers and privileges available to the state by virtue of public law number fifteen, seventy-ninth congress of the United States, chapter twenty, first session, senate number three hundred forty, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states.
“ 2. (a) Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer: (1) the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments or other considerations for such contracts, or (4) any other transaction of business, is equivalent to and shall constitute an appointment by such insurer of the superintendent and his successor in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit, or proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance, and any such act shall be signification of its agreement that such service of process is of the same legal force and validity as personal service of process in this state upon such insurer. * * * (e) Nothing in this section contained shall limit or abridge the right to serve any process, notice or demand upon any insurer in any other manner now or hereafter permitted by law.”