**Louis FENNELL, Plaintiff–Appellant,**

v.

**TLB KENT COMPANY and Joseph Pietryka, Defendants–Appellees.**

**No. 529, Docket 87–7617.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 26, 1988.

Decided Jan. 10, 1989.

Darrin Berger, Huntington, N.Y., for plaintiff-appellant.

Eugene F. Frink, Pawling, N.Y., for defendants-appellees.

Before FEINBERG, MESKILL and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This is an appeal from a final judgment of the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge,* entered on June 16, 1987 which dismissed plaintiff's action and approved a $10,000 settlement agreement.[1] The attorneys for the parties negotiated a settlement and reported it to the court by telephone. Based on this conference call, the district court entered an order on January 20, 1987 which dismissed the action with prejudice, but provided that "within sixty days of the date of this order any party may apply by letter for restoration of the action to the calendar of the undersigned." Plaintiff's counsel requested that the action be restored to the calendar on March 20, 1987. After a hearing on June 16, 1987, the district court dismissed the action and approved the settlement, finding that plaintiff's attorney had had apparent authority to settle the case and plaintiff was accordingly bound by the settlement agreement.

We reverse and remand.

---

1. The notice of appeal states that it is taken from "the final judgment dismissing this action entered in this action on the 16th day of June, 1987." The reference is apparently to Judge Stanton's oral statement in open court on that date that "the action is dismissed, the settlement is approved, and the court is adjourned." No separate final judgment appears in the record or appendix. We nonetheless conclude that this appeal is properly before us from a "final decision" within the meaning of 28 U.S.C. § 1291 (1982). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974) (requirement of finality to be given a

"practical rather than technical construction" (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949))); *Staggers v. Otto Gerdau Co.,* 359 F.2d 292, 295 (2d Cir.1966) (same); *United States v. Rockower,* 171 F.2d 423, 424–25 (2d Cir.1948) (appeal allowed although no formal order entered below embodying district court's final determination), *cert. denied,* 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949). We note in this regard that it was at least arguably the responsibility of the district court and its clerk to enter judgment without any action by the parties. *See* Fed.R.Civ.P. 58.

## Background

Plaintiff-appellant Louis Fennell commenced this action in the United States District Court for the Southern District of New York on January 7, 1985 against his employer,[2] alleging wrongful discharge because of his race and age in violation of 42 U.S.C. § 1981 (1982). Fennell was represented by C. Vernon Mason and several of his associates, including Fred K. Brewington.

The case was on Judge Stanton's ready calendar on January 6, 1987. On January 16, 1987, however, Brewington and Eugene Frink, defendants' attorney, agreed to settle the case for $10,000 during a telephone conversation. The settlement was reported to the court by both attorneys in a telephone conference call on January 20, 1987. The district court issued an order of dismissal on the same day which provided that either party could apply to the court by letter to restore the case to the court's calendar within sixty days of the order. The settlement was conditioned upon Fennell signing a general release and a stipulation of discontinuance being filed with the court, which never occurred.

Fennell expressed his dissatisfaction with the settlement in a letter to the district court dated March 28, 1987. Fennell there contended that he had told Brewington on January 16, 1987 that he would not approve a $10,000 settlement, but he was willing to settle the case out of court "with the intentions of getting it out of the way and behind me." He also claimed that he had told Mason on January 20, 1987 that $10,000 was not a satisfactory settlement, and that he had tried several times in early February, 1987 to contact Mason's office by telephone about the case, but elicited no response. Fennell further stated that he had gone to Mason's office on February 20, 1987, at which time Mason informed him that the case has been settled for $10,000,

whereupon Fennell reiterated his dissatisfaction with that settlement.

On February 27, 1987, Fennell wrote Mason expressing his dissatisfaction with the settlement agreement and indicating that he had "no further use of [Mason's] services." A copy of this letter was sent to the district court and received there on March 3, 1987. On March 20, 1987, Brewington wrote to the district court requesting that the "matter be restored to the calendar as the settlement which was authorized and accepted by our client is no longer acceptable to him," and that Mason and his associates be released by the court as counsel to Fennell.

Following a status conference on June 5, 1987, the district court held a hearing on June 16, 1987 to determine whether Fennell's case should be restored to the calendar. At the conclusion of the hearing, the district court dismissed the action and approved the settlement. This ruling was based upon a finding that Fennell's attorney had been clothed with "apparent authority" when he settled the case, and the court's expressed view that "[t]o allow a client to reject a settlement which has been agreed upon by his attorney with apparent authority is to open the door to a mild form of chaos."

On appeal, Fennell asserts that it was an abuse of discretion for the district court not to have vacated its order of dismissal pursuant to Fed.R.Civ.P. 60(b)(1). Appellees contend that since Fennell's attorney was clothed with apparent authority to settle the case, Fennell is bound by that settlement.

## Discussion

### A. The Applicable Law.

In discussing Rule 60(b), Wright and Miller state that "[t]he grounds and the procedure for setting aside a federal judgment

---

**2.** The complaint named two defendants, TLB Kent Company and Joseph Pietryka, an employee of that company and plaintiff's immediate supervisor. The caption of the complaint named as defendants TLB Kent Company and "Joseph Pietryka, in his capacity." That capacity is nowhere explained in the complaint. The settlement agreement apparently contemplated a payment of $10,000 to plaintiff by his employer. As a further complication, defendant's answer asserts that "TLB Kent Company" is simply a trade name for plaintiff's actual employer, TLB Plastics Corporation.

are entirely a matter of federal law, on which state law may be disregarded." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2853, at 147–48 (1973) (citations omitted); *see Vassos v. Societa Trans–Oceanica Canopus, S.A.*, 272 F.2d 182, 183 (2d Cir.1959) (any attempt to reopen a federal district court judgment completely controlled by Fed.R.Civ.P. 60), *cert. denied*, 362 U.S. 935, 80 S.Ct. 756, 4 L.Ed. 2d 747 (1960).

On the other hand, an advisory note to Rule 60(b) states that "Rule 60(b) does not assume to define substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief." Fed.R.Civ.P. 60(b) advisory committee's note to 1946 amendment.[3] Further, it is not at all clear that the ruling on appeal here is the determination of a Rule 60(b) motion. That rule only applies to the reconsideration of a *"final* judgment, order or proceeding." *Id.* (emphasis added). Here, by contrast, the district court's original order provided "that within sixty days of the date of this order any party may apply by letter for restoration of the action to the calendar of the undersigned," and therefore appears provisional rather than final by its very terms. *Cf. Audiovisual Publishers, Inc. v. Cenco, Inc.*, 580 F.2d 50, 51 (2d Cir.1978) (motion for reconsideration of prior order denying vacation of stipulation of settlement deemed a motion to vacate judgment and grant a new trial pursuant to Rule 60(b)).

Be all that as it may, two circuits have ruled that where an action is based upon federal law, the authority of an attorney to settle that action is a federal question. *See Edwards v. Born, Inc.*, 792 F.2d 387, 389 (3d Cir.1986) (dictum); *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 386 (5th Cir.1984). There is also analogous support for this view in the Second Circuit. *See Brown v. General Motors Corp.*, 722 F.2d 1009, 1012 n. 1 (2d Cir.1983) (Oakes, J., concurring) (scope of release to be deter-

mined by federal law in federal civil rights action); *cf. International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 50 (2d Cir.1979) (in suit for patent infringement, New York law governs settlement agreement negotiated, consummated and to be performed in New York, and expressly made subject to New York law). In the absence of weighty countervailing considerations, we are inclined to follow our sister circuits in deeming federal law applicable to the question before us. *See Keasler v. United States*, 766 F.2d 1227, 1233 (8th Cir.1985). In any event, to the extent that deference might be accorded to New York precedents concerning what is at root a fairly general question of agency law, *see Greater Kansas City Laborers Pension Fund v. Paramount Indus.*, 829 F.2d 644, 646 (8th Cir.1987) (rules governing attorney's authority to settle case "the same as those which govern other principal-agent relationships"), the outcome would in our view be the same, as will hereinafter appear.

### B. *The Merits.*

We turn now to the district court's determination that Fennell's attorney was clothed with apparent authority to settle the case, resulting in denial of the motion to vacate the prior order of dismissal.

■ We begin with the undisputed proposition that the decision to settle is the client's to make, not the attorney's. *United States v. Beebe*, 180 U.S. 343, 352, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901) ("the utter want of power of an attorney, by virtue of his general retainer only, to compromise his client's claim, cannot, we think, be successfully disputed."); *Barthelmas v. Fidelity–Phenix Fire Ins. Co.*, 103 F.2d 329, 331 (2d Cir.1939) (same); *see Thomsen v. Terrace Navigation Corp.*, 490 F.2d 88, 89 (2d Cir.1974) (only "exigent circumstances" might empower an attorney to settle case without client's consent); Model Code

---

**3.** Although this advisory note was addressed to the 1946 version of Rule 60(b), that version paralleled current Rule 60(b)(1) in providing that a party might be relieved from "a judgment, order or proceeding taken against him through *his mistake, inadvertence, surprise, or excusable neglect*" (emphasis added). It is puzzling to learn that the emphasized language does not constitute "grounds" for relief.

of Professional Responsibility EC 7–7 (1980) ("in civil cases, it is for the client to decide whether he will accept a settlement offer"). On the other hand, if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld. *International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 55 (2d Cir.1979).

The district court made the following findings concerning the issue of apparent authority: 1) that Mason and his associates represented Fennell "in dealing with the other side," 2) that they were authorized to appear at conferences for him, 3) that Fennell knew that settlement was being discussed, 4) that Fennell did not tell his counsel not to continue discussing settlement, 5) that Fennell would have accepted a higher settlement figure ($50,000–75,000), and 6) that Fennell did not tell defendants' counsel that the authority of plaintiff's counsel was limited in any way. The district court concluded that Fennell's counsel "had every appearance of being authorized to make a binding agreement with [defendants' counsel]." The district court then applied the common law principle that an agent clothed with apparent authority binds the principal as to actions taken within the scope of that authority, together with the principle favoring settlement agreements, to conclude that Fennell was bound by the settlement agreement.

■ Apparent authority is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with *the other's manifestations* to such third persons." Restatement (Second) of Agency § 8 (1958) (emphasis added). Further, in order to create apparent authority, the *principal must manifest to the third party* that he "consents to have the act done on his behalf by the person purporting to act for him." *Id.* § 27. Second Circuit case law supports the view that apparent authority is created only by the representations of the principal to the third party, and explicitly rejects the notion that an agent can create apparent

authority by his own actions or representations. *See Trustees of UIU Health & Welfare Fund v. New York Flame Proofing Co.*, 828 F.2d 79, 84 (2d Cir.1987); *Karavos Compania Naviera S.A. v. Atlantica Export Corp.*, 588 F.2d 1, 10 (2d Cir.1978); *see also Edwards v. Born, Inc.*, 792 F.2d 387, 390–91 (3d Cir.1986) (apparent authority not present where record devoid of direct communication from client to opposing attorney).

■ In this case, taking the facts as the district court found them, Fennell made no manifestations to defendants' counsel that Mason and his associates were authorized to settle the case. Fennell's attorneys accordingly had no apparent authority to settle the case for $10,000 without Fennell's consent. The district court's findings that Mason and his associates represented Fennell, and that they were authorized to appear at conferences for him, do not prove otherwise. A client does not create apparent authority for his attorney to settle a case merely by retaining the attorney. *See United States v. Beebe*, 180 U.S. 343, 352, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901).

Further, the court's findings that Fennell knew settlement was being discussed, did not ask his attorneys not to discuss settlement, would have accepted a higher settlement figure, and did not tell defendant's counsel that the authority of plaintiff's counsel was limited in any way, do not lead to a different outcome. These findings involve only discussions between Fennell and his attorneys or things that Fennell did *not* say to opposing counsel. None of these findings relates to positive actions or manifestations by Fennell to defendants' counsel that would reasonably lead that counsel to believe that Fennell's attorneys were clothed with apparent authority to agree to a definitive settlement of the litigation.

Finally, we note that the application of state law would not yield a contrary result. Since all parties are New York residents and the settlement negotiations occurred in New York, New York law would obviously be applicable. Defendants contend that *Hallock v. State*, 64 N.Y.2d 224, 474 N.E.2d 1178, 485 N.Y.S.2d 510 (1984),

would call for a decision in their favor if New York law were considered applicable. We disagree.

*Hallock* held that a stipulation of settlement made by counsel in open court may bind his clients even where it exceeds his actual authority, provided that there is apparent authority. 64 N.Y.2d at 228, 231; 474 N.E.2d at 1179, 1181–82; 485 N.Y.S.2d at 511, 513–14. In that case, however, an applicable court rule required that attorneys attending pretrial conferences have authority to enter into binding court settlements on behalf of their clients, a co-plaintiff attended the conference from which Hallock was absent because of illness, and more than two months passed before plaintiffs made any objection to the settlement. 64 N.Y.2d at 228–29, 474 N.E.2d at 1179–80, 485 N.Y.S.2d at 511–12. *Hallock* explicitly recognized that "without a grant of authority from the client, an attorney cannot compromise or settle a claim," 64 N.Y. 2d at 230, 474 N.E.2d at 1181, 485 N.Y.S.2d at 513, and that:

> Essential to the creation of apparent authority are *words or conduct of the principal, communicated to a third party*, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his own acts imbue himself with apparent authority.

64 N.Y.2d at 231, 474 N.E.2d at 1181, 485 N.Y.S.2d at 513 (emphasis added).

We do not think the rule stated in *Hallock* would apply here, where a purported settlement agreement was reached in a telephone conference by counsel in which no party participated and Fennell made prompt objection to that agreement upon being advised as to its terms. *See Gordon v. Town of Esopus*, 107 A.D.2d 114, 116, 486 N.Y.S.2d 420, 421 (3d Dep't) (*Hallock* "can and should be read" as limited to cases involving stipulations in open court), *leave to appeal denied*, 65 N.Y.2d 609, 494 N.Y.S.2d 1028, 484 N.E.2d 671 (1985). The generally applicable New York rule is that " '[a] party who relies on the authority of an attorney to compromise an action in his client's absence deals with such an attorney at his own peril.' " *Melstein v. Schmid Laboratories, Inc.*, 116 A.D.2d 632, 634, 497 N.Y.S.2d 482, 483 (2d Dep't 1986) (quoting *Slavin v. Polyak*, 99 A.D.2d 466, 467, 470 N.Y.S.2d 38, 39 (2d Dep't 1984)). See *Ford v. Unity Hosp.*, 32 N.Y. 2d 464, 472, 299 N.E.2d 659, 664, 346 N.Y. S.2d 238, 244 (1973) ("[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority"); *Warson Constr. Co. v. Schlussel*, 68 A.D.2d 947, 948, 413 N.Y.S.2d 793, 794 (3d Dep't 1979) (same) (citing *Ford*).

We realize that the rule we announce here has the potential to burden, at least occasionally, district courts which must deal with constantly burgeoning calendars. A contrary rule, however, would have even more deleterious consequences. Clients should not be faced with a Hobson's choice of denying their counsel all authority to explore settlement or being bound by *any* settlement to which their counsel might agree, having resort only to an action against their counsel for malpractice. In any event, even if we were to consider such a rule advisable, the applicable precedents and settled principles of agency law would preclude its adoption.

### Conclusion

Reversed and remanded for further proceedings not inconsistent herewith.

FEINBERG, Circuit Judge (concurring):

I concur in the result of the majority opinion, but on a different ground.

As the majority points out, in January 1987 the attorneys for the parties negotiated a settlement and reported it to the court by telephone, apparently in a conference call just before the case was to go to trial. The district judge thereafter entered an order which dismissed the action with prejudice, but provided that

> It having been reported to this Court that the above entitled action has been settled, it is hereby

> ORDERED, that this action be, and the same hereby is, dismissed with preju-

dice but without costs; provided, however, that within sixty days of the date of this order any party may apply by letter for restoration of the action to the calendar of the undersigned.

Such "60-day" orders are obviously common in the district courts and facilitate settlement of civil actions.

The purpose of the 60-day period in which to apply for restoration of the action to the calendar and the conditions to be satisfied in making such application were described by the district judge. On June 16, 1987, when he ruled on appellant's request for such restoration, the judge commented on the 60-day order, as follows:

> These orders are entered as a matter of routine in appropriate circumstances, and they serve a useful function of allowing parties to agree on the terms of a settlement and to perform the paperwork involved in completing a settlement, that is usually the exchange of releases and the exchange of cash, while retaining access to the court in *case there should be a difficulty with the consummation of the settlement, and if the settlement should not be approved or be illusory,* the immediate access or re-access to the court for purposes of trial. (emphasis added).

Thus, from the judge's own words, it is reasonable to assume that if the settlement was "not approved" and turned out to be "illusory," there would be immediate "access to the court ... for purposes of trial." Moreover, absent some limiting language, this construction of the judge's January "60-day order" is a reasonable one, even if he had said nothing in explanation of it in June.

What occurred here is precisely the sort of event referred to by the judge. The "settlement" turned out to be illusory because the client, plaintiff-appellant, would not accept it, and the attorney reapplied within 60 days for restoration to the calendar. Under the circumstances, the refusal to restore the case to the calendar was an abuse of discretion since the expressed conditions were met.

Of course, the district judge must have had something else in mind when in June 1987 he used the words quoted above in explanation of the 60-day order, because he immediately went on to hold that, in view of the timely application before him, the issue was:

> whether a binding agreement was made to settle the case for $10,000, in which event this case should be dismissed and the plaintiff relegated to whatever rights he may have against his former attorney for breach of the instructions in that agency relationship, or whether on the other hand the settlement is not a binding contract, in which event this case should go forward for trial.

But that more limited meaning was certainly not clear from the language of the 60-day order itself or from the judge's explanation of it. And, absent clearer language in the order, plaintiff is entitled to his day in court rather than being required to accept a settlement to which he never agreed.

Under the circumstances, I do not find it necessary to consider the broader issues of apparent authority discussed in the majority opinion. On this more limited basis, I concur in the majority's decision to reverse the judgment of the district court and remand for further proceedings.