**MANCHESTER EQUIPMENT CO., INC., Plaintiff,**

v.

**AMERICAN WAY AND MOVING CO., INC., A subsidiary of Mayflower Transit, Inc., Louderback Transportation Co., Inc., A subsidiary of Mayflower Transit, Inc., Mayflower Transit, Inc., a subsidiary of Unigroup, Inc. and Unigroup, Inc., Defendants.**

**No. CV 97–6798.**

United States District Court, E.D. New York.

Aug. 9, 1999.

4

Kressel, Rothlein & Roth, by Stephen Kressel, Massapequa, NY, for plaintiff.

Law Offices of George W. Wright, by George W. Wright, Mayflower Transit, Inc., New York City, for defendant.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Manchester Equipment Co., Inc. ("Manchester") is a computer equipment distributing and servicing company. In this diversity action, Manchester seeks to hold defendants liable for the loss of approximately $500,000 worth of computer equipment stolen from Manchester by an individual posing as a Manchester client. All defendants exception Mayflower Transit, Inc. ("Mayflower") have been dismissed for lack of personal jurisdiction. Presently before the court is Mayflower's motion for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

#### I. *Factual Background*

The facts leading to the loss of Manchester's computer equipment are summarized in the parties' submissions to this court. For purposes of this motion, the facts are construed in the light most favorable to Manchester, the non-moving party. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Covington v. City of New York,* 171 F.3d 117, 121 (2d Cir.1999).

Sometime in May of 1997, a Manchester officer received a telephone call from an individual who identified himself as David Lancaster. Mr. Lancaster stated that he was a Vice President of Time–Warner, an established Manchester client. Lancaster placed an order with Manchester for a large quantity of computer equipment val-

ued at approximately $500,000. A Manchester sales manager testified at deposition that he verified Lancaster's identity as a Time–Warner officer with a Time–Warner executive in New York and with a representative of a Time–Warner affiliate.

In June of 1997, Manchester received a written purchase order from Lancaster for the computer equipment referred to in the May telephone call. This purchase order listed an address in Wilmington, Delaware as the shipping destination. Lancaster identified the Wilmington address as a Time–Warner distribution center. In reality, however, the address provided by Lancaster was the address of American Way Moving and Storage Co., Inc. ("American Way"). American Way is engaged, *inter alia,* in the business of providing moving and storage services. Unbeknownst to Manchester, once the order was placed, Lancaster contacted American Way to arrange for delivery of the equipment. Specifically, Lancaster contacted American Way's terminal manager, identified himself as a Time–Warner Vice President and explained that he wished to purchase 2,500 feet of storage space for computer equipment. Lancaster told the American Way representative that the computer equipment would need to be stored for a short period of time and would be picked up by Time–Warner trucks for shipment to a Warner Communications facility in Pennsylvania.

Manchester shipped the computers ordered by Lancaster in two separate shipments to the Delaware address. The computers were received by American Way on June 12 and 13, 1997. They were thereafter released to Lancaster's drivers. At the time of pick-up, Manchester had not been paid for the equipment. Invoices sent to Time–Warner's offices to the attention of David Lancaster were returned to Manchester as undeliverable.

#### II. *Plaintiff's Complaint*

Plaintiff's lawsuit, commenced in New York State Court and removed to this

court, alleges a single cause of action. Specifically, plaintiff alleges that its loss of the computer equipment was caused by the negligence of defendants in "failing to implement reasonable and appropriate measures of identification and verification before delivery of the [computer equipment] to the person or persons unknown."

### III. *The Present Motion*

As noted above, all defendants, except for Mayflower, have been dismissed for lack of personal jurisdiction. Mayflower, the parent company of American Way, now moves for summary judgment.

Mayflower argues several grounds in support of its motion. First, Mayflower, sued solely in its capacity as the parent company of American Way, argues that the facts do not support imposition of liability based on this relationship. Mayflower also argues that it had no relationship with Manchester whatsoever and therefore owed Manchester no duty of care. Turning to the merits of plaintiff's claim, Mayflower argues that Manchester will be unable to prove American Way's liability, therefore it will be impossible to impose liability upon Mayflower. Finally, Mayflower argues that Manchester's own negligence in allowing itself to be "duped" by Lancaster should estop Manchester from recovering its loss from Mayflower.

In response to Mayflower's motion, Manchester states the issue succinctly. "The question for the court is whether the negligence of the subsidiary non-party, American Way, can be attributed to its parent, Mayflower ..." The court turns to that issue.

### DISCUSSION

### I. *Legal Principles*

A. *Standards For Motion For Summary Judgment*

A motion for summary judgment is granted only if the court determines that no genuine issue of material fact exists and

the moving party is entitled to judgment as a matter of law. FRCP 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505.

B. *Parent Company Liability For Acts Of A Subsidiary*

 The law recognizes that corporations may be organized in ways to limit liability among separate entities. Under New York law, a parent company is not automatically liable for the acts of its wholly-owned subsidiary. Instead, the law is quite to the contrary. Liability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary. *People v. Garban, LLC f/k/a Garban Ltd.,* 1999 WL 496182 at *3–4 (Sup.Ct.1999), quoting, *Morris v. New York State Dep't of Taxation and Finance,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993). In fact, New York courts are "reluctant" to disregard corporate form and will do so only if the form has been used to achieve fraud or the parent exercises such extreme dominion and control over the subsidiary as to render the corporate form a sham. *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979).

 It is the level of control that a parent exercises over a subsidiary that will

determine whether the parent can be held liable for the subsidiary's acts. Parent liability will be found if: (1) the parent exercised "such control that the subsidiary 'has become a mere instrumentality' of the parent, which is the real actor; (2) the control has been used to commit fraud or other wrong and, (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir.1991), quoting, *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 157, 287 N.Y.S. 62 (1st Dep't), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936). Liability may be predicated either upon a showing of fraud or complete domination of the subsidiary by the parent corporation. *Passalacqua*, 933 F.2d at 138.

■■ Factors to be considered in determining whether there has been a sufficient showing of control include whether there has been adherence to corporate formalities, the degree of capitalization of the subsidiary and the use of the subsidiary's funds by the parent. *American Protein Corporation v. AB Volvo*, 844 F.2d 56, 60 (2d Cir.1988). Other factors include overlap in ownership, officers, directors and personnel, common office space or telephone numbers, the degree of discretion demonstrated by the subsidiary, whether the corporations are treated as independent profit centers and the payment or guarantee of the subsidiary's debts by the parent. *People v. Garban, LLC f/k/a/ Garban Ltd.*, 1999 WL 496182 at *3–4 (Sup.Ct. 1999). Importantly, the fact that directors sit on the boards of both the parent and the subsidiary, standing alone, is not enough to establish the level of control necessary to hold the parent liable for the subsidiary's acts. *See id.* In addition, it has been held that the control exercised by the parent must exist with respect to the transaction at issue. *See id.*

C. *Agency Liability*

In addition to claiming that Mayflower is liable to Manchester because it is American Way's parent company, Manchester argues that Mayflower is responsible for the acts of American Way because American Way served as Mayflower's agent in connection with the transaction at issue.

At the outset, the court recognizes that in the case of a parent-subsidiary relationship, it has been held that the standards to be applied for determining whether a corporation is acting as an agent for a related corporation are the same as the standards discussed above. To impose a less stringent standard would defeat the purpose of separate corporate organization to limit liability. *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 735 (S.D.N.Y.1986); *see also Stone & Webster Management Consultants, Inc. v. the Travelers Indemnity Company*, 1996 WL 180025 *21 n. 12 (S.D.N.Y.1996). The Second Circuit has recognized the application of uniform standards when considering the liability of related corporations, such as parents and subsidiaries, but has not reached the question of its propriety. *See Itel Containers Internat'l Corp. v. Atlanttrafik Express Service Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990).

■ To the extent that an agency theory of liability is available to hold a parent liable for the acts of a subsidiary, such theory would impose liability if the subsidiary had authority, actual or apparent to act on the parent' behalf. *See Royal Industries Limited v. Kraft Foods, Inc.*, 926 F.Supp. 407, 413 (S.D.N.Y.1996), *aff'd*, 164 F.3d 619 (2d Cir.1998). "[A] parent corporation may become a party to its subsidiary's contract under an agency theory if the parent's conduct manifests an intent to be bound by the contract." *Id.*

■ An express agency will be found where there are written or spoken words, or other conduct of the principle [in this case Mayflower] "which, reasonably interpreted, causes the agent [in this case American Way] to believe that the principle desires him" to act on the principal's account. *Itel*, 909 F.2d at 702, quoting

Restatement (Second) of Agency ("Restatement") § 26 (1958). Importantly, whether such an agency exists depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship. *Id.*

An implied agency, on the other hand, depends upon the reasonable conclusion of a third party, based upon the actions of the principal, that the agent has the authority to bind the principal. *Herbert Construction Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir.1991), quoting, *Ford v. Unity Hospital*, 32 N.Y.2d 464, 472–73, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659 (1973). Such apparent authority "is created as to a third party by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Itel*, 909 F.2d at 702, quoting, Restatement § 27. To recover on an apparent authority theory it must be shown that the principle was responsible for the appearance of the agent's authority and the third party reasonably relied upon the agent's representations. *Herbert Construction*, 931 F.2d at 993–94; *C.E. Towers Co. v. Trinidad and Tobago (BWIA Internat'l) Airways Corp.*, 903 F.Supp. 515, 523–24 (S.D.N.Y.1995).

With the principles discussed above in mind, the court turns to consider the corporate relationship between American Way and Mayflower.

## II. *American Way and Mayflower*

### A. *Facts Alleged By Mayflower*

American Way is a wholly-owned subsidiary of Mayflower. There is no dispute that American Way acts as an agent of Mayflower with respect to Mayflower's interstate transportation. American Way also provides storage services in connection with Mayflower's interstate transport of goods. At all times relevant to this lawsuit, Mayflower and American Way shared some corporate officers but maintained separate stock, profit and loss, and financial statements and separate assets.

Mayflower states, and plaintiff does not dispute, that there are numerous business activities carried out by American Way without the control and/or consent of Mayflower. In particular, American Way operates as a local (intrastate) moving and storage company within the state of Delaware. In the operation of this local business, American Way leases space under its own name, maintains an American Way bank account and payroll and maintains workers compensation insurance for employees under the American Way name. Importantly, at all relevant times, American Way was able to accept local intrastate moving and storage business from customers without the approval of Mayflower. Not only was Mayflower's consent unnecessary to American Way's transaction with Lancaster, but, in addition, Mayflower had no knowledge of the arrangement.

### B. *Manchester's Attempt To Show Control*

To establish the relationship necessary to impose liability on Mayflower for the acts of American Way, Manchester relies on three pieces of evidence. First, plaintiff relies on a document, presumably obtained through discovery, referred to as a "Supplemental Warehouse Listing." This document bears the name "Mayflower" on its face and refers to the Lancaster transaction. Second, plaintiff relies on corporate documents indicating that American Way and Mayflower have common directors and that Mayflower administers American Way's pension plan. Finally, plaintiff points to a letter sent from Lancaster to Dale Glover, American Way's terminal manager, confirming the arrangement for storage of the computer equipment. That letter is written on "Warner Communications" stationery and is addressed to Mr. Glover at the Mayflower

Transit Company, and not at American Way.

## III. *Mayflower Is Not Liable For The Acts Of American Way*

### A. *Control Theory of Liability*

The court has considered the documents submitted by plaintiff in support of the claim that there is a genuine issue of fact concerning the control and domination of American Way by Mayflower and concludes that no such issue is raised. First, it is clear that the Supplemental Warehouse Listing is an internal document generated by American Way for its in-house time-keeping and billing purposes. It evidences no control of American Way's business by Mayflower. The corporate documents indicate nothing more than the fact that Mayflower and American Way share common directors. As noted above, this fact does not support a finding of complete domination and control of a subsidiary that would impose liability upon the parent company. *See People v. Garban, LLC f/k/a Garban Ltd.*, 1999 WL 496182 at *3–4 (Sup.Ct.1999); *see also Duffy v. Drake Beam Morin*, 1998 WL 252063 at *5 (S.D.N.Y.1998) (parent administration of subsidiary benefit plan is "hardly uncommon" and cannot be relied upon to hold parent liable for alleged employment discrimination of subsidiary).

The letter to the terminal director at American Way, which is addressed to Mayflower, rather than American Way, gives this court some pause. Specifically, the letter raises the possibility that an American Way representative speaking to Lancaster may have identified the company as Mayflower. Nonetheless, this letter, never received by plaintiff, does not establish either alone or in conjunction with the other evidence relied upon, total domination and control of American Way by Mayflower. Nor does the letter or the other evidence sufficiently counter the strong factual showing of separateness demonstrated by Mayflower.

In sum, plaintiff's allegations, taken as true for the purpose of this motion, establish that Mayflower and American Way had a normal parent/subsidiary relationship that did not involve the complete domination and control of American Way by Mayflower. Moreover, Mayflower had no involvement whatsoever in the transaction involving American Way's alleged negligence that is the subject of this lawsuit. Under these circumstances, Mayflower has established that it cannot be held liable for the acts of its subsidiary in connection with the storage of Manchester's stolen computer equipment. Manchester has created no issue of fact to the contrary.

### B. *Agency Theory of Liability*

Plaintiff fares no better with respect to imposition of agency liability. Clearly, there can be no claim of actual authority. Focusing on the acts of Mayflower and American Way, there is no doubt that their actual interaction can not be relied upon to support the notion that Mayflower intended for American Way to act as its agent with respect to the storage of Manchester's stolen computer equipment.

Nor can it be said that there was apparent authority for American Way to act on Mayflower's behalf with respect to the transaction. As noted above, it is the third party's perception of the Mayflower–American Way relationship that must be considered to determine whether apparent authority should be imposed. If the third party to be considered is Manchester, no apparent authority can possibly exist. Manchester had absolutely no contact with American Way and therefore could not have perceived the company as acting on behalf of Mayflower.

Even if the third party whose perception is to be considered is Lancaster, the court declines to hold that apparent authority should be found. For obvious reasons, the court has not been presented with any direct evidence of who Lancaster believed he was dealing with when he contracted with American Way. The fact that Lancas-

ter's letter was addressed to Mayflower is the only evidence of Lancaster's perception. The court holds that this letter is not evidence strong enough on which to base a finding of apparent authority as to Lancaster—much less strong enough evidence to support plaintiff's. claim that Mayflower should be liable in apparent authority to Manchester, a stranger to the transaction between Lancaster and American Way.

Even if the letter is deemed sufficient evidence of Lancaster's reasonable belief that he was contracting with Mayflower, and that belief may inure to the benefit of Manchester, there is absolutely no evidence that Mayflower was responsible for the appearance that American Way acted on its behalf when dealing with Lancaster. As noted, recovery on an apparent authority theory is dependent upon a showing that the principal was responsible for the appearance of authority. *Herbert Construction*, 931 F.2d at 993–94. Here, there is simply no evidence of any such action on the part of Mayflower. In light of the foregoing, the court holds that Mayflower may not be held liable to Manchester based upon an agency theory of liability.

### CONCLUSION

For the foregoing reasons, the court holds that Mayflower cannot be held liable to Manchester either by virtue of its status as the parent company of American Way or on any agency theory of liability. It is therefore unnecessary to reach the additional grounds raised in Mayflower's motion. The court grants Mayflower's motion for summary judgment. Because all other defendants have been previously dismissed by order of this court, the Clerk of the Court is directed to close the file in this case.

SO ORDERED.