■ FLEET BANK, Appellant, v CONSOLA, RICCITELI, SQUADERE POST No. 17, INC., et al., Respondents. [701 NYS2d 182] —Spain, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered April 1, 1999 in Albany County, upon a decision of the court in favor of defendants.

In the instant mortgage foreclosure action plaintiff seeks a declaration, *inter alia*, that it is entitled to sell defendant's real property and that plaintiff is due certain moneys from defendant for certain notes, mortgages and loan agreements executed in 1995. Defendant, a not-for-profit corporation which operates a war veterans' club in the City of Watervliet, Albany County, had a checking account with plaintiff dating back to the early 1950s. Frank Mastan was a member of defendant's club and from 1993 through 1995 held several leadership positions therein, including commander and president of the board of directors. This action arises from the criminal conduct of Mastan, who is not a party to this action, in repeatedly borrowing money from plaintiff in defendant's name by falsely representing that he was acting on behalf of, and with authorization from, defendant. Notably, Mastan was convicted in Federal court in February 1997 upon his plea of guilty of the crime of robbery (18 USC § 2113 [b]), for which he was sentenced to a term of imprisonment and probation and ordered to pay $63,478 in restitution to plaintiff.

As background, in May 1993 Mastan successfully applied to plaintiff for a commercial loan in the amount of $35,000, designating defendant as the borrower. Mastan executed a note as defendant's senior vice commander. In making that loan application, Mastan wrote and submitted a letter on defendant's letterhead which stated that defendant's members had voted to borrow up to $47,000 secured by a mortgage on their real property to renovate their facility which was located thereon. It was signed by Mastan as general chairman and

also by defendant's treasurer as co-chairman, and provided that an account be set up requiring both of their signatures on all checks.

As relevant to this action, in January 1995 plaintiff granted Mastan's application, again made in defendant's name as its commander and president, for a second loan of $55,000 to pay off the outstanding balance (approximately $28,000) on the original loan and to complete additional renovations. Mastan also submitted to plaintiff updated financial statements regarding defendant's financial condition prepared by his personal bookkeeper. This loan was memorialized in an agreement signed by Mastan as defendant's general chairman, and secured by a mortgage in that amount on defendant's real property signed by Mastan as defendant's president. Mastan submitted in support a resolution, purportedly of defendant's board of directors, authorizing the loan, signed by Mastan as defendant's president and accompanied by a certification also signed by Mastan as defendant's secretary. The proceeds of the second loan were deposited in a new, separate account from defendant's existing account with plaintiff.

In March 1995, Mastan submitted a third loan application in defendant's name which plaintiff granted, loaning defendant an additional $9,000. The loan was secured by an additional mortgage on defendant's property, signed by Mastan as defendant's president. In support, Mastan submitted a resolution—signed by him as defendant's president—ostensibly authorizing this loan and mortgage. Plaintiff and Mastan, acting as defendant's president, executed an extension/consolidation agreement dated March 30, 1995 consolidating into one obligation the outstanding balances of $54,478 and $9,000 (totaling $63,478) due on the second and third loans.

Notably, while the balance on the original $35,000 was paid off with proceeds of the second loan, by Mastan's own admission the bulk of the loans' proceeds were used by him for his personal expenses rather than being expended for defendant's benefit. Mastan testified that approximately $9,000 of the proceeds obtained in 1995 were paid in cash for labor and materials used to create an apartment in defendant's club for himself which he claimed defendant's members authorized. Defendant's treasurer disputed that Mastan was authorized to spend defendant's funds on the apartment and there was no documentary proof of such expenditures.

In May 1997, plaintiff notified defendant by letter that it was in default on the 1995 obligations. When no payments were made, plaintiff instituted this action seeking, *inter alia*, author-

ity to sell defendant's mortgaged real property and declaring the amount due on the outstanding notes and mortgages. In its answer defendant asserted as an affirmative defense, *inter alia*, that Mastan had never been authorized to mortgage defendant's property or borrow money on defendant's behalf, that the corporate resolutions purporting to authorize Mastan's conduct and relied upon by plaintiff were fraudulent, and that it had been unaware of Mastan's fraudulent scheme.

After Supreme Court denied the parties' motions for summary judgment, a nonjury trial ensued following which Supreme Court ruled in favor of defendant, dismissed the complaint and vacated the mortgages on defendant's real property. The court reasoned that the corporate resolutions submitted by Mastan upon which plaintiff relied in granting the second and third loans were patently fraudulent and invalid; that defendant's officers and members had not authorized Mastan to obtain these 1995 loans, to execute the documents to obtain these funds or to secure the mortgages; and that these transactions had been made without defendant's knowledge.

On plaintiff's appeal we affirm, rejecting its contention that the evidence adduced at trial established that Mastan possessed actual or apparent authority to execute the notes and borrow money on behalf of defendant in 1995, secured by mortgages on defendant's real property. The first loan for $35,000 has been repaid and is not the subject of plaintiff's complaint. Regarding the $55,000 and the $9,000 loans, Mastan himself testified that the documents he submitted to plaintiff purporting to be defendant's corporate resolutions authorizing these 1995 loans were fraudulent, that no such corporate meetings were ever held and that defendant never authorized these loans or mortgages.

Importantly, the creation of apparent authority for Mastan to enter the transactions in issue as defendant's agent requires words or conduct *of the principal*—defendant—communicated to plaintiff as a third-party, which gave rise to the appearance and reasonable belief that the agent—Mastan—possessed authority to enter into the transactions (*see, Hallock v State of New York*, 64 NY2d 224, 231; *see also, City of Cohoes v Kestner Engrs.*, 226 AD2d 914, 916; *Standard Bldrs. Supplies v Gush*, 206 AD2d 720, 721; *Meade v Finger Lakes-Seneca Coop. Ins. Co.*, 184 AD2d 952, 953). While Mastan was an officer of defendant's club, and may have been authorized by defendant to obtain the first loan in 1993—an issue on which there was conflicting testimony—this would not have automatically invested Mastan with unlimited apparent authority to bind de-

fendant in the future to subsequent loans and mortgages (see, Ford v Unity Hosp., 32 NY2d 464).

Further, the record demonstrates that plaintiff failed to take even minimal steps to discover the actual scope of Mastan's authority (see, id., at 472; Chelsea Natl. Bank v Lincoln Plaza Towers Assocs., 93 AD2d 216, 219, affd 61 NY2d 817). An "agent cannot by his own acts imbue himself with apparent authority" (Hallock v State of New York, supra, at 231). Moreover, plaintiff made no factual showing that defendant was responsible for the appearance of authority in Mastan to conduct the 1995 transactions, i.e., that plaintiff was lulled into reliance upon Mastan's misrepresentations because of some misleading conduct by defendant—the principal—and, thus, plaintiff may not rely on principles of apparent authority to bind defendant for Mastan's conduct (see, id.; see also, Ford v Unity Hosp., supra, at 473; Bruckner v Hartford Acc. & Indem. Co., 239 AD2d 806, 807, lv denied 90 NY2d 812; cf., Mid-Atlantic Autec v Keeler Motor Car Co., 199 AD2d 732, 733). Additionally, as Supreme Court implicitly concluded, the corporate resolutions upon which plaintiff relied—executed only by Mastan as president and one of which was also certified by him as defendant's secretary—did not provide a reasonable basis for plaintiff to conclude that Mastan was cloaked with actual or apparent authority to enter into the loan transactions or mortgages. Accordingly, we find no basis upon which to disturb Supreme Court's decision.

Cardona, P. J., Mercure, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, with costs.