OPINION OF THE COURT
Andrea Masley, J.
The trial began on August 2, 2011 and continued on August 3 and 4, 2011. Plaintiff Adrian Smith testified and called Wilfredo Balmaceda, defendant’s house manager, as a witness. Elizabeth Williams, executive assistant to Mrs. Blavatnik, testified for defendant.
This is an action for breach of contract in which Mr. Smith seeks damages in the amount of $5,000 for unpaid consulting fees.
It is undisputed that Mr. Smith assists clients who wish to hire domestic servants. It is also undisputed that from April 2006 to May 1, 2008, Mr. Smith ran a licensed employment agency to place domestic staff. (License, exhibit 18.) Mr. Smith credibly testified and reiterated throughout the trial that the work he did for Mr. Blavatnik was identical to the work he performed as a licensed employment agency. It is also undisputed that Mr. Smith is no longer licensed as required by General *426 Business Law § 172. As an unlicensed employment agency, any agreement Mr. Smith may have had with Mr. Blavatnik is unenforceable. (CPLR 3015 [e].) Therefore, Mr. Smith lacks standing to bring this action and the action is dismissed with prejudice.
Even if Mr. Smith were licensed or a license was not required, he failed to establish that he had an agreement with Mr. Blavatnik or that Mr. Blavatnik breached such an agreement. Mr. Smith’s testimony that “it was a given” does not establish an agreement to be paid by Mr. Blavatnik.
The credible testimony and evidence established that after Mr. Smith “cold” called either Mrs. Blavatnik or Ms. Williams in February 2011, and offered his services; he was referred to Mr. Balmaceda. Mr. Smith and Mr. Balmaceda communicated by phone and email from February through April 2011. Mr. Smith referred a number of potential applicants to Mr. Balmaceda. While Mr. Balmaceda interviewed a few candidates, none were hired. Although he was unsuccessful in placing any applicants in the Blavatnik home, Mr. Smith maintains that he is entitled to a consulting fee of $150 per hour.
Mr. Smith conceded he never communicated with Mr. Blavatnik and there was no written contract with him. Mr. Smith also failed to establish that Mr. Blavatnik held out either Mr. Balmaceda, Ms. Williams or anyone else as having the authority to bind Mr. Blavatnik to such a contract. “[T]he existence of ‘apparent authority’ depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal — not the agent.” (Ford v Unity Hosp., 32 NY2d 464, 473 [1973].) “One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority.” (Id. at 472.)
Even if Mr. Blavatnik had such an agreement with Mr. Smith, Mr. Smith failed to testify or provide evidence, such as a phone log or time sheets, as to how many hours he worked. Mr. Smith’s testimony that he spent hundreds of hours is not supported by the limited number of emails he submitted into evidence and the credible testimony.
Mr. Smith, Ms. Williams and the documents in evidence, e.g. exhibit C, establish that recruitment agencies charge a fee of 15% to 18% of the starting annual salary of the placed employee. There was nothing in evidence to support an alternate calculation in the industry. Mr. Smith could not identify any other *427 clients with whom he had such an agreement, nor did he supply copies of such agreements.
Mr. Smith accused Mr. Balmaceda of illegal discrimination. Even though the complaint, which defines the scope of issues at trial, is silent about discrimination, the court allowed testimony and evidence concerning the alleged discrimination because Mr. Smith is unrepresented and this court takes discrimination very seriously. Mr. Smith’s assertion of discrimination is based on emails in which Mr. Balmaceda states: “No Philippines thanks” (email on Apr. 29, 2011, 11:30 a.m., exhibit 14); “No Philippine since today” (email on Apr. 29, 2011, 11:49 a.m., exhibit 14); and “I need profile picture before interviewing” (email on Mar. 11, 2011, exhibit 9).
On April 30, 2011, Mr. Smith emailed Ms. Williams complaining about the alleged discrimination.
“Confidential. I need to speak to you. Do NOT discuss this email with Wilfredo. This concerns him, and breaking the law. I’m disgusted, and this need to be resolved. I’ve spent almost 6 months with Wilfredo, and this is the last straw! His emails to me clearly broke the law, and I’m totally fed up. I’ve made a call to a lawyer, but hopefully you and I can make this go away, and leave out the lawyers . . . and make it all go away quietly. We need to discuss this immediately, quietly, and without drama.”
According to her credible testimony, Ms. Williams called Mr. Smith immediately and felt Mr. Smith was attempting to “shake down” defendant. Indeed this argument is consistent with Mr. Smith’s repeated testimony that Mr. Blavatnik is extremely wealthy.
Mr. Smith’s testimony was not credible and evasive. The court draws an adverse inference from Mr. Smith’s refusal to answer questions at trial as to whether he was seeking hush money or blackmailing defendant. When asked what jobs he placed since 2002, he talked about his licensed business before 2002 and obfuscated without ever answering the question. When asked who agreed to pay him $150 an hour to search for staff, he responded “These are trick questions.”
It is unlawful for an employment agency to discriminate on the basis of gender or national origin. (Executive Law § 296; Administrative Code of City of NY § 8-107 [1] [b].)
“[W]hile an individual may choose to hire a domestic servant using whatever criteria he or she may *428 desire, . . . that. . . privilege does not extend to an agent acting on behalf of a prospective employer; the privilege is personal to the employer. To rule otherwise would permit an employment agency to discriminate against prospective job applicants under the guise that they were merely filling the requirements of the prospective employer.” (Matter of Pavillion Agency, Inc. v Spitzer, 9 Misc 3d 626, 631 [Sup Ct, NY County 2005].)
If anyone was engaging in unlawful discrimination, it was Mr. Smith who sent only women for certain jobs and only men for other jobs in the Blavatnik home. On April 15, 2011, Mr. Balmaceda requested “female executive housekeepers” and Mr. Smith complied. (Email, exhibit 12.) Mr. Balmaceda rejected one candidate as overqualified and “plus it has to be a female.” (Email, Apr. 26, 2011, exhibit 14.) For example, in a March 14, 2011 email from Mr. Balmaceda saying “I would like to interview the butlers,” Mr. Smith wrote “MALE.” (Email, exhibit 10.) On March 12, 2011, Mr. Smith wrote “Let me know which guys you want to see on Monday.” (Email, exhibit 11.) On March 11, 2011, Mr. Smith wrote “I’ll send you a few more men tonight.” (Email, exhibit 12.)
Mr. Smith has the burden of proof, but he failed to satisfy it.
Accordingly, it is ordered, that the action is dismissed with prejudice.