(April 22, 1993)

■ FLEET CREDIT CORPORATION, Appellant, v CABIN SERVICE

COMPANY, INC., et al., Respondents. [596 NYS2d 801] —Order, Supreme Court, New York County (Shirley Fingerhood, J.), entered November 26, 1991, which denied plaintiff's motion for summary judgment, unanimously reversed, on the law, with costs, and plaintiff's motion for summary judgment is granted.

Pursuant to a loan agreement dated January 25, 1988, Leeds Associates loaned defendant Cabin Service Company $175,000 to enable Cabin to purchase two taxicabs and their medallions. Edward Teitelbaum was a partner of Leeds Associates and the sole shareholder of Cabin. Also on January 25, 1988, the following documents were executed: (1) an installment promissory note under which Cabin agreed to pay Leeds the principal plus interest in 59 monthly installments; (2) a security agreement-chattel mortgage giving Leeds a first lien and security interest in the medallions; and (3) an assignment by Leeds of the loan agreement, security agreement and Cabin note (with recourse) to plaintiff Fleet Credit Corporation's predecessor-in-interest, Bankers Trust Company (Bankers). By virtue of the assignment, Bankers became the owner and holder of the Cabin note and the holder of the first lien and security interest in the medallions. In connection with the assignment, Leeds guaranteed payment of the amounts due and owing under the Cabin note.

Fleet thereafter acquired and succeeded to Bankers' interest in the loan agreement, Cabin's note and the security agreement (hereafter the "Cabin loan documents"). After acquiring Bankers' interest in the Cabin loan documents, Fleet duly perfected its first lien and security interest in the medallions by filing UCC-1 financing statements with the appropriate State and local authorities, thus giving every subsequent creditor of Cabin, including defendant Progressive Credit Union (Progressive), notice of Fleet's lien and security interest in the medallions. Monthly installments due on the Cabin note were paid to Fleet until April 1990 when there was a default. Pursuant to the terms of the loan agreement Fleet accelerated the debt and demanded payment of the balance due, but Fleet was never paid.

Unbeknown to Fleet, in January of 1989 George D. Dunnigan applied to Progressive for a $250,000 loan to purchase Cabin. Progressive searched the County and State lien records and thereupon discovered the UCC-1 financing statements identifying Fleet as the assignee of Leeds' security interest in Cabin's medallions. Progressive assumed, based on a pur-

ported "custom and usage in this [taxi] industry," that Leeds was acting as the servicing agent on the loan assigned by Leeds to Bankers, and by Bankers to Fleet. Consequently, Progressive contacted Leeds to determine the amount due on the loan (the "pay-off number"). Having received a pay-off number of $158,791.86, Progessive arranged a closing and issued its check in that amount payable to Dunnigan and Leeds, still assuming that Leeds was Fleet's agent. Dunnigan endorsed the check to Leeds, assuming that that would pay off Cabin's loan in full. To secure the obligation to repay the new loan, Progressive required Cabin to grant Progressive a lien and security interest in the medallions. The parties were thereafter unaware, until the default, that Teitelbaum had not paid the proceeds of the check to Fleet, but rather had absconded with the money.

Fleet commenced the within action to foreclose on defendants' interests in, and to obtain possession of, the medallions. After service of defendants' joint answer, Fleet moved for summary judgment on the ground that Fleet had succeeded to Bankers' interest in the Cabin loan documents and held a duly perfected first lien and security interest in the medallions, and further, that Cabin had defaulted on its note and Fleet had not been paid despite demand. Opposing the motion, defendants claimed that Fleet had not established that it had succeeded to Bankers' interest in the Cabin loan documents, and that their payment of $158,791.86 to Leeds was sufficient to satisfy their obligations to Fleet because they reasonably believed Leeds had authority to accept payment for Fleet.

However, defendants did not set forth any affirmative act or representation by Fleet upon which they allegedly relied in making payment to Leeds as the purported agent for Fleet. Indeed, defendants never even contacted Fleet to ascertain whether Leeds had any authority to act on behalf of, much less accept payment for, Fleet. Defendants conceded that even though they believed they had paid off the Cabin note, they never asked Fleet to return the Cabin note marked "paid" and never asked Fleet for UCC-3s, terminating Fleet's first lien and security interest in the medallions. In reply, Fleet flatly denied that Leeds was ever a servicing agent for Fleet, or that Fleet had ever by word or conduct given anyone reason to believe that any agency relationship existed between Leeds and Fleet.

The IAS Court agreed with defendants that factual questions existed with respect to both issues raised by defendants,

and denied Fleet's motion for summary judgment. We disagree, and now reverse.

Addressing first the "chain of title" issue, Salvatore DiStefano, Fleet's Assistant Vice President, averred that on January 25, 1988, when the Cabin loan documents were executed, the Equipment Finance Group of Bankers was being acquired by Fleet, and Fleet was assigned all of Bankers' rights in various transactions including the Cabin loan. The UCC-1s filed with the County and State designate Fleet as the assignee of Leeds' interest in the medallions; they are signed by Teitelbaum on behalf of Cabin and Leeds, and no issue is raised as to the authenticity of those documents. We observe that defendants could have sought an affidavit from Bankers Trust officials if no assignment had been made. In sum, no evidence was submitted by defendants that would raise a factual issue respecting the assignment to Fleet of Bankers' interests in the Cabin loan documents, including the security interest in the taxi medallions granted by Cabin to Leeds.

Nor is there a factual issue respecting defendants' contention that they reasonably relied on Leeds' representations through its principal Teitelbaum that Leeds or Teitelbaum had authority as servicing agent to accept payments on behalf of Fleet. Under New York law, apparent authority can only arise where the principal, not the purported agent, engages in words or conduct which gives a third person a reasonable basis for believing that the purported agent has authority to act on behalf of the principal (*Hallock v State of New York,* 64 NY2d 224, 231; *Greene v Hellman,* 51 NY2d 197, 204; *Ford v Unity Hosp.,* 32 NY2d 464, 473). As previously noted, defendants failed to submit evidence of even one act or statement by Fleet upon which they might reasonably have relied in believing that Leeds could accept payment for Fleet on the Cabin note. We also observe that since Cabin and Leeds were owned by Teitelbaum, defendants are in effect contending that Fleet's debtor had authority to collect the very debt it owed to Fleet, which borders on the absurd. Accordingly, Fleet's motion for summary judgment should have been, and is hereby, granted in its entirety. Concur—Murphy, P. J., Carro, Kupferman, Asch and Kassal, JJ.