896 F.Supp. 337 (1995)
GOLDEN GULF CORPORATION, Plaintiff,
v.
JORDACHE ENTERPRISES, INC., and Lucky-Goldstar International (U.K.) Limited, Defendants.
No. 91 CIV. 8506 (LAK).
United States District Court, S.D. New York.
August 29, 1995.
*338 Norman Malinski, Aventura, FL, for plaintiff.
Thomas A. Smart, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Jordache Enterprises, Inc.

MEMORANDUM OPINION
KAPLAN, District Judge.
Plaintiff Golden Gulf, a Panamanian company, sues for declaratory and monetary relief on six causes of action, claiming in essence that defendant Jordache Enterprises, Inc. ("Jordache")[1] falsely led it to believe that approximately 180,000 pairs of jeans purchased by plaintiff were free from trademark restrictions. Defendant, owner of the valuable JORDACHE® trademark, denies *339 the charge and moves here for summary judgment.

Facts
The jeans, which bear the JORDACHE® trademark, are left over merchandise which were manufactured and held in Korea by Lucky-Goldstar International, a Korean corporation ("Lucky-Goldstar Korea"), pursuant to a license agreement with Jordache. The agreement permitted sale of the jeans solely in Korea (Def. 3(g) Stmt. ¶¶ 4-5), which evidently was impossible. Jordache therefore encouraged Lucky-Goldstar Korea to investigate other countries as possible disposal points, with the proviso that "Jordache Enterprises would have to approve any destination point before any shipment is made." (Def. Mem. Ex. A)
Without informing Jordache or obtaining its approval, Lucky-Goldstar, UK, a British subsidiary of Lucky-Goldstar Korea with no right itself to license the JORDACHE® trademark,[2] acquired the jeans from Lucky Goldstar Korea and then sold them to a British company called Express Wholesale, which in turn sold the jeans to plaintiff Golden Gulf. (Id. ¶ 10) As part of the sale, Lucky-Goldstar UK issued a certificate warranting that there was no trademark restriction on the jeans. There is no evidence that this representation was made with Jordache's authority. (Id. ¶ 9-11) Moreover, there is no evidence that Jordache and Golden Gulf had any communication regarding the jeans until after the sale. Finally, there is no evidence that Jordache ever communicated with Express Wholesale regarding the sale.
Jordache learned of the sale after the jeans had been shipped to Genoa, Italy, pursuant to Golden Gulf's instructions. Jordache immediately notified the parties that no sale could be made outside Korea without Jordache's approval. Jordache has permitted solicitation of sales in several countries, mostly in Eastern Europe and Africa, and has not denied Golden Gulf the opportunity to sell to any particular identified purchaser, although the parties have agreed that Golden Gulf will not sell the jeans in the United States. (Id. ¶ 10) Golden Gulf has had almost no luck selling the jeans, and brings this suit to free it from defendant's trademark restrictions, presumably to allow it to sell in a country of its choosing.

Discussion
Golden Gulf claims both that Jordache negligently misrepresented that the jeans could be sold without trademark restrictions and that Jordache is equitably estopped to deny that fact. Both of these claims must be dismissed because each requires as an essential element that defendant affirmatively have made a misrepresentation or otherwise misled plaintiff before liability will attach. See Estate of T.C. Sabarese v. First National Investment Corp., 1994 WL 573320 (S.D.N.Y. Oct. 18, 1994) (negligent misrepresentation requires misrepresentation by plaintiff to defendant); K. Bell & Associates, Inc. v. Lloyd's Underwriters, 827 F.Supp. 985, 989 (S.D.N.Y.1993) (equitable estoppel requires affirmative representation from defendant to plaintiff). As examined above, Golden Gulf and Jordache had no contact whatsoever before Golden Gulf bought the jeans. It follows that Jordache did not make any misrepresentations to or otherwise mislead Golden Gulf with respect to the jeans.
Similarly, Golden Gulf claims that Jordache fraudulently induced Golden Gulf to buy the jeans either directly through solicitation of Golden Gulf or indirectly by conferring actual or apparent authority on Lucky-Goldstar Korea to sell the jeans without trademark restrictions. Insofar as this claim is based on Jordache's alleged solicitation of Golden Gulf or its conferring of apparent authority on Lucky-Goldstar Korea to sell the jeans outside Korea, it must be rejected because there was no contact between Jordache and Golden Gulf before the sale of the *340 jeans. Fleet Credit Corp. v. Cabin Service Corp., 192 A.D.2d 421, 596 N.Y.S.2d 801 (1st Dep't 1993) ("apparent authority can only arise when the principal, not the purported agent, engages in conduct which gives a third person reasonable basis for believing that the purported agent has authority to act on behalf of the principal"). Furthermore, Golden Gulf's contention that Jordache granted Lucky-Goldstar UK actual authority to sell the jeans without trademark restrictions also must be rejected. Jordache did not grant Lucky-Goldstar UK express authority to transfer the jeans without trademark restrictions. As mentioned above, Jordache in fact carefully guarded its trademark rights when Lucky-Goldstar International attempted to sell the jeans outside Korea. Thus there was no actual authority to grant Golden Gulf the right to sell the jeans without trademark restrictions. Carte Blanche (Singapore) PTE, Ltd. v. Diners Club International, Inc., 758 F.Supp. 908, 919 (S.D.N.Y.1991) (actual authority is a manifestation of consent from principal to agent); Ford v. Unity Hospital, 32 N.Y.2d 464, 472, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659, 664 (1973) ("An agent's power to bind his principal is coextensive with the principal's grant of authority").
Golden Gulf seeks also a judgment declaring that it is entitled to sell the jeans without trademark restrictions. Golden Gulf, however, has not demonstrated that there is a justiciable controversy, as Jordache has not blocked any attempted sales to any identified potential purchaser.
The Declaratory Judgment Act requires that an actual controversy exist before a plaintiff may receive declaratory relief. 28 U.S.C. § 2201(a). In the trademark context, the mere vague and unspecific desire to use a mark is too contingent to give rise to an actual controversy. Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87 (2d Cir.1963). Rather, there must be a "definite intent and apparent ability to commence use" of the mark. G. Heileman Brewing Co. v. Anheuser-Busch, Inc., 873 F.2d 985 (7th Cir.1989); see also Berni v. International Gourmet Restaurants of America, 838 F.2d 642 (2d Cir. 1988) (absence of evidence that plaintiff may establish commercial venture in future, inter alia, defeats declaratory judgment motion). The only prospective sales identified by Golden Gulf were to buyers in the United States, a possibility now excluded because of the parties' agreement that Golden Gulf will not sell in the United States. Hence, it is impossible to know whether Jordache would obstruct any future prospective sales. Golden Gulf's declaratory judgment claim therefore is not ripe and must be rejected.
Golden Gulf sues additionally as a purported third party beneficiary for breach of contract between Lucky-Goldstar UK and Jordache. "[T]hird party beneficiary rights arise, if at all, from a contract, and the contracting parties must have intended to confer a direct benefit on the third party." Beaumont v. American Can Co., 621 F.Supp. 484, 492 (S.D.N.Y.1985), aff'd 797 F.2d 79 (2d Cir.1986). Here, the contract that existed between Jordache and Lucky-Goldstar Korea did not confer the right to sell the jeans without trademark restrictions; it specifically limited Lucky-Goldstar Korea to selling the jeans in Korea absent express authorization from Jordache. Nor is there any evidence that Jordache and Lucky-Goldstar intended to confer a direct benefit on any third party, much less Golden Gulf in particular. Thus even if Lucky-Goldstar Korea and Lucky Goldstar UK were regarded as a single entity, the contract manifestly would not have given Golden Gulf the right to sell the jeans outside Korea free from trademark restriction. This claim therefore must be rejected.
Finally, Golden Gulf maintains that Jordache is tortiously interfering with Golden Gulf's business relations. To prove tortious interference, plaintiff must show that Jordache (1) interfered with business relations existing between plaintiff and a third party, either (a) with the sole purpose of harming plaintiff or (b) by means that were dishonest, unfair or improper. If Jordache's action was intended, at least in part, to advance its own competing interests, the claim must fail unless the means employed include criminal or fraudulent conduct. PPX Enterprises v. Audiofidelity Enterprises, 818 F.2d 266 (2d Cir.1987). "A trademark owner is entitled to advise others of his trademark rights ... and to threaten accused infringers and their customers with suits." Leopold v. Henry I. Siegel Co., 1987 WL 5373 (S.D.N.Y. January 5, 1987). Golden Gulf has shown neither an existing business relationship that has been or threatens to be disrupted by Jordache nor that Jordache has done anything *341 more than protect its legitimate trademark interests. This claim therefore is rejected.

Conclusion
Defendant's motion is granted. The case is dismissed.
SO ORDERED.
NOTES
[1] Lucky-Goldstar International (U.K.) Limited ("Lucky-Goldstar UK"), the other named defendant, was dismissed from the case for lack of personal jurisdiction.
[2] Plaintiff asserts that Lucky-Goldstar UK was an authorized licensee of Jordache, primarily on the ground that both Lucky-Goldstar Korea and Jordache behaved as if Lucky-Goldstar UK and Lucky-Goldstar Korea were one company. (Pl. Mem. at 2-3) Even if true, this would not be material to the resolution of this motion because it is not disputed that the licensing agreement with Lucky-Goldstar Korea did not permit sale of the jeans outside Korea free from trademark restrictions.